**AMOCO OIL COMPANY, Plaintiff,**

v.

**M. T. MARY ELLEN, her engines, boilers, etc.,**

**and**

**Marianne Tankers, Inc., Claimant-Defendant,**

**Cosmopolitan Shipping Co., Inc., Defendant.**

**MARIANNE TANKERS, INC., Claimant-Defendant and Third-Party Plaintiff,**

**and**

**Cosmopolitan Shipping Co., Inc., Defendant and Third-Party Plaintiff,**

v.

**AMOCO TRANSPORT COMPANY, Third-Party Defendant.**

**No. 80 Civ. 4983.**

United States District Court, S. D. New York.

Dec. 14, 1981.

Walker & Corsa, New York City, for plaintiff and third-party defendant; Henry E. Billingsley, New York City, of counsel.

Haight, Gardner, Poor & Havens, New York City, for claimant-defendant and defendant; Bert Weinstein, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge: .

On or about July 17, 1980, plaintiff Amoco Oil Co. ("Amoco Oil") consigned a shipment of approximately 507,784 barrels of oil for transport on the defendant vessel, *M.T. Mary Ellen*, from Bejaia, Algeria, to Corpus Christi, Texas. The oil was to be delivered to Amoco Oil, but the vessel grounded, causing alleged contamination and short delivery of the oil. The bill of lading was issued by Marianne Tankers, Inc., the vessel owner. It was on the proper form of the Algerian national oil agency, Sonatrach, and was validated for issue upon review and signing by the ship owner's agent, the master of the *M.T. Mary Ellen*. The bill was in fact signed by the master before issuance.

Defendants moved, after extensive discovery and briefing, to compel plaintiff to arbitrate the claim made in this case. Defendants argue that the bill of lading issued to Amoco Oil should be read to have incorporated the charter party entered into between the vessel's owner and Amoco Transport Co. ("Amoco Transport"), which con-

tains a clause requiring the parties to submit all disputes between them to arbitration. Defendants emphasize the close relationship between Amoco Oil and Amoco Transport, arguing that the parties to the charter must have intended that all goods shipped on the vessel would be governed by the terms of the charter party. They assert that the present case comes within the rule that the holder of a bill of lading is required "to arbitrate under the charterparty arbitration agreement where the bill of lading (1) clearly *refers* to the charterparty, and (2) where the holder of the bill of lading has *notice* of the incorporation of the charterparty." Marianne Tankers Supplemental Memo. 6 (emphasis in original).

Defendant properly states the law. But the facts of this case do not fit the rule stated. The letter of credit issued to Amoco Oil contains no reference whatsoever to any specific charterparty. The bill contains the following printed words:

All terms, conditions and exceptions of the Charterparty dated _____ are to apply to the contract contained in or evidenced by this Bill of Lading and are considered to be embodied herein.

Exhibit A, Affidavit of Richard A. Corwin, Esq. The blank space is left entirely empty. The only other use of the word "charterparty" is in the sentence preceding the one quoted above. After describing the product consigned for shipment, the form continues as follows (with typewritten words indicated in capital letters):

which shall be delivered in the like good order and condition at the point of COR-PUS CHRISTI, TEXAS, U.S.A. or so near thereto as the vessel may safely get, always afloat, and there discharged unto AMOCO OIL COMPANY or order on payment of freight in accordance with the charterparty hereinafter mentioned.

The printed word "charterparty" in this context has meaning only if a charter party is in fact later mentioned, but none is.

The law does not require a complete absence of ambiguity in the reference to a charter party, as a precondition to the in-

corporation of its terms in a bill of lading. Defendant has referred to three decisions that reflect the readiness of District Judges to find arguably ambiguous references sufficient where that finding effectuates the apparent intentions of the parties. But in each of those cases the bill of lading language—either as part of the printed form or inserted—provided a written basis for finding the necessary reference.

In *Amoco Overseas Co. v. S.T. Avenger*, 387 F.Supp. 589 (S.D.N.Y.1975), Judge Ward dealt with a bill of lading that clearly contained a reference to a charter party, albeit an ambiguous one. The bill provided in printed language for delivery to the consignee, and then specified delivery upon payment of freight <u>"AS AGREED,"</u> with the last two words typed in. Immediately thereafter the bill continued: "This shipment is carried under and pursuant to the terms of the contract/charter dated ——— between MESSRS. OCEAN COURIER, INC. and MESSRS. MONTEDISON MILANO AMOCO as charterer, and all the terms whatsoever of the contract/charter except the rate and payment of freight specified therein apply to and govern the rights of the parties concerned in this shipment." *Id.* at 590–91. No party named Montedison Milano Amoco existed and the date of the charter party was left blank. But the Court found there was "no confusion whatsoever concerning who in fact was the charterer on this voyage, or which charter party governed the rights of the charterer vis-a-vis the shipowner...." *Id.* at 591. In addition, Judge Ward found that the consignee and charterer were clearly connected, and that the parties to the bill of lading intended to incorporate the charter party terms.

In *Midland Tar Distillers, Inc. v. M/T Lotos*, 362 F.Supp. 1311, 1312 (S.D.N.Y. 1973), Judge Cannella held that a bill of lading incorporated an underlying charter party where it provided that the goods were to be carried "subject to all the terms, liberties and conditions of CHARTER PARTY DATE . . . . ." The bill was dated July 29, 1970, and the charter party was dated July 20, 1965. But Judge Connella found a

sufficient reference, since the bill could only have referred, in the three typewritten words, to the charter party of July 20, and because the bill named the plaintiff twice, thereby giving it ample notice. Judge Motley's decision in *Coastal States Trading, Inc. v. Zenith Navigation S.A.*, 446 F.Supp. 330 (S.D.N.Y.1977), extensively discusses the alter ego theory for charter incorporation, but goes on to rely on the bill of lading's clear reference to the charter party by both the typed words, "freight per charter party," and by the printed, unqualified language, "All conditions and exceptions of the Charter Party being considered embodied in this Bill of Lading." *Id.* at 338. Judge Motley found it clear which charter party the bill intended to incorporate, and plaintiff had notice because it was named in the bill. *Compare, e.g., United States v. Cia. Naviera Continental, S.A.*, 202 F.Supp. 698 (S.D.N.Y.1962) (standard incorporation clause with no identifying date insufficient to incorporate charter party into bill of lading).

■ In the present case, plaintiff Amoco Oil was no alter ego of Amoco Transport or other Amoco subsidiaries. Although Amoco Oil and Amoco Transport have their offices in the same building, they have quite deliberately been established as separate companies, and they operate as such. *Compare Fisser v. International Bank*, 282 F.2d 231 (2d Cir. 1960): *Chilean Nitrate Sales Corp. v. The Nortuna*, 128 F.Supp. 938 (S.D.N.Y. 1955); *Amoco Overseas Co. v. S.T. Avenger, supra*. In these circumstances, there is no reason to disregard the well-considered choice reflected by Amoco's intentionally complex legal structure.

Plaintiff may be assumed to have had notice of the charter party as well as of the bill of lading, but the bill contains no reference to the charter party and so plaintiff's awareness of the charter suggests only that its nonincorporation was intentional. The absence of detailed terms from the bill of lading is insignificant. Any such bill, for cargo moving to the United States, incorporates by force of law the terms embodied in

the United States Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–1315 (1976). Defendant also claims that the charter party terms requiring the master to sign all bills of lading "as presented" effectively prevented the master from expressly incorporating the charter party even though its incorporation was intended. *See* Weinstein Affidavit, Ex. 6, ¶ 20 (charter party). But defendant refers to no evidence indicating either an intent or any effort to incorporate the charter party in the bill, and the master was free to refuse to sign the bill if its terms varied materially from those he was instructed to accept. Plaintiff, in short, has not agreed to arbitrate and therefore cannot be required to do so.

Finally, defendant asserts that, if plaintiff is not required to arbitrate, the action should be stayed pending arbitration of the dispute between defendants and Amoco Transport, which has been made a third-party defendant. But defendants' claim is not now subject to arbitration. *Compare, e.g. Dale Metals Corp. v. Kiwa Chemical Industry Co., Ltd.*, 442 F.Supp. 78 (S.D.N.Y. 1977); *Lawson Fabrics, Inc. v. Akzona, Inc.*, 355 F.Supp. 1146 (S.D.N.Y.), *aff'd*, 486 F.2d 1394 (2d Cir. 1973); *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F.Supp. 688, 693 (S.D. N.Y.1966). Here, defendants' claim in their third-party complaint is for indemnity. It comes into existence only if and when any defendant is held liable under a bill of lading and is thereby placed under an obligation inconsistent with the charter party's terms. Third-Party Complaint, ¶ 8. While the third-party claim may be subject to the charter party's arbitration clause, there is nothing to arbitrate under that claim until the plaintiff's suit is resolved.

The motion to require arbitration is denied. Plaintiff's cross-motion to strike the arbitration defense is granted. F.R.Civ.P. 12(f). The parties are ordered to report a schedule for the completion of all remaining discovery at a pretrial conference to be held at 11:00 a. m. on December 18, 1981.

SO ORDERED.