United States Court of Appeals,

Fifth Circuit.

No. 93-3509.

CARGILL INCORPORATED and Savannah Foods, Inc., Plaintiffs-Appellees,

v.

GOLDEN CHARIOT MV, The, her engines, boilers, tackle, furniture, apparel, etc., in rem and Golden Chariot Marinera, S.A., in personam, Defendants-Appellants.

Sept. 12, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WISDOM, DAVIS and DUHÉ, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The M/V Golden Chariot and Golden Chariot Marinera, S.A. ("Marinera") appeal the district court's denial of its motion to stay federal court proceedings pending arbitration. We affirm.

I.

This dispute arose over the contamination of a cargo of sugar aboard the M/V Golden Chariot. Savannah Foods (Savannah) entered a contract to buy sugar from Cargill, Inc. Cargill purchased the sugar from Argentinean and Paraguayan sources, and then chartered the M/V Golden Chariot from its owner, Marinera, to transport the sugar from Buenos Aires, Argentina to Savannah, Georgia. After loading was complete, Marinera delivered clean on board bills of lading to Cargill. Six bills of lading were negotiated and transferred from Cargill to Savannah, five of which were for the Argentinean sugar and one of which was for the Paraguayan sugar.

When the vessel arrived in Georgia, glass and bottles were discovered in the Paraguayan sugar. Savannah attempted to reject the entire shipment of sugar, but Cargill claimed that Savannah held title and thus bore the risk of loss.

Despite Cargill's contention that it did not bear the risk of loss, Cargill presented a claim to the cargo underwriters; Cargill and Savannah argue that this was done on Savannah's behalf. They also maintain that Cargill collected the payment for the loss and applied it against Cargill's invoice to Savannah for the purchase price of the sugar.

Cargill then filed this suit against Marinera seeking compensation for the loss. The complaint was later amended to add Savannah as a plaintiff and states that Savannah and/or Cargill were the owners, successors, or predecessors in title to the cargo.

Marinera filed a motion to stay proceedings pending arbitration. Marinera relied on the charter party between Cargill and Marinera, which contains an arbitration clause stating that "any and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York." Cargill argued that the governing contracts were the bills of lading issued by Marinera to Cargill and negotiated to Savannah. The bills of lading contain no arbitration clause.

The district court determined that the dispute was not subject to arbitration. The court based its conclusion on its determination that Savannah owned the sugar at the time of the loss and was the proper party to assert the claim, that the bill of lading was the contract of carriage, and that the bill of lading for the Paraguayan sugar did not incorporate the charter party's arbitration term. Marinera filed a timely appeal.

## II.

Marinera argues that the court erred in concluding that Cargill was not required to arbitrate this dispute and in denying its application for stay pending arbitration. First, it argues that Savannah is not the proper party plaintiff because Savannah did not hold title to the cargo. Next, it argues that the bill of lading is not the contract of carriage. Finally, it argues that even if the bill of lading is the governing contract of carriage, the arbitration clause was incorporated into the bill of lading and should control. We address these arguments below.

## A.

Marinera first argues that Cargill, not Savannah, is the proper party plaintiff. Marinera contends that this is critical because Cargill is a party to the charter party that includes an arbitration clause. Savannah, of course, was not a party to the charter agreement. Marinera argues that Savannah was not the owner of the contaminated sugar because it rejected the damaged cargo and title reverted to Cargill. The accuracy of this conclusion is supported, according to Marinera, by the fact that Cargill filed the insurance claim and received payment for the damaged sugar from the

underwriters. For these reasons, Marinera contends that Cargill was the proper party plaintiff.

Savannah and Cargill point to their Master Bulk Raw Sugar Contract which provides that title passed to Savannah when the vessel was assigned to transport the sugar. They argue that while there are provisions allowing rescission when sugar is ineligible for entry due to quota restrictions, the contract has no similar provision allowing Savannah to rescind if the sugar is damaged. To the contrary, risk of loss under the contract passes to Savannah upon loading of the vessel. According to Cargill and Savannah, Cargill filed the insurance claim on Savannah's behalf to take advantage of Cargill's longstanding relationship with the underwriter.

The district court accepted Cargill and Savannah's contention that Savannah held title at the time of loss, pursuant to the Bulk Raw Sugar Contract, and had not rescinded the contract. We review the district court's findings of fact under the clearly erroneous standard. *Curry v. Fluor Drilling Services,* 715 F.2d 893, 895 (5th Cir.1983). The district court did not err in determining that Savannah owned the sugar at the time of the loss. Mr. Espy, Savannah's officer, testified that he initially sought to rescind the contract. However, Cargill's representative later persuaded Mr. Espy that title had already passed to Savannah and Mr. Espy was satisfied when Cargill agreed to pursue the cargo damage claim against underwriters. Even if Savannah was entitled to rescind the contract, the district court was entitled to credit the testimony of the representatives of Cargill and Savannah that they did not rescind the contract.

### B.

Marinera next argues that the charter party, not the bill of lading, constitutes the governing contract of carriage because this was a private carriage. *Alamo Chemical Transportation Co. v. M/V Overseas Valdes,* 469 F.Supp. 203, 208-11 (E.D.La.1979) (where charter party provided that the charterer employed the "entire ship" or "full capacity of the ship," it is a private carriage and the charter party is the contract of carriage). According to Marinera, the bill of lading was simply a receipt for goods, having nothing to do with title.

Cargill and Savannah maintain that when cargo is sold to a third party receiver of goods, who was not a party to the charter agreement, and the bill of lading is delivered to that party, the bill of

lading becomes the contract of carriage. *Associated Metals & Minerals Corp. v. M/V Venture,* 554 F.Supp. 281, 283 (E.D.La.1983); *Ministry of Commerce v. Marine Tankers Corp.,* 194 F.Supp. 161, 162-3 (S.D.N.Y.1960).

The district court determined that this was not a private carriage because under the charter party Marinera could load other cargo: "If cargo covered by this charter is part cargo, Owner may load other cargo ..." The district court further concluded that because Savannah held the bill of lading and owned the sugar at the time of the loss, the bill of lading constituted the contract of carriage.

The district court correctly concluded that the bill of lading constituted the contract of carriage. We agree with the court's statement of the law in *Associated Metals:*

> Where a bill of lading, as here, has been transferred for value to a third party, not a party to the charter party, it constitutes an undertaking independent of the charter party except as to provisions of the charter party expressly incorporated into it.

*Id.* at 283 (citations omitted).

Cargill negotiated the bill of lading to Savannah, and Savannah was not a party to the charter agreement. Therefore, the bill of lading constituted the contract of carriage.

C.

Finally, Marinera argues that even if the bill of lading constitutes the contract of carriage, the bill of lading incorporated the terms of the charter party, and therefore, the arbitration clause must be enforced.

A bill of lading can incorporate a charter party if the bill of lading specifically refers to the charter party. *M/V Venture,* 554 F.Supp. at 283. However, where the date and name of the charter party is left blank, there is no incorporation. *Amoco Oil Co. v. M/T Mary Ellen,* 529 F.Supp. 227, 229 (S.D.N.Y.1981). In *Amoco Oil,* as in the instant case, the bill of lading included a provision to incorporate a charter party. The provision had blanks for the date and the parties to the charter party sought to be incorporated. The blanks were not filled in. The shipowner argued that the bill of lading was still incorporated because of the close relationship between Amoco Oil (the third party purchaser) and Amoco Transport (the charterer). The shipowner argued that Amoco Oil must have known about the arbitration clause in the charter party.

The court disagreed. It held that where the bill of lading does not clearly refer to the charter party, Amoco Oil's awareness of the charter suggests "that its nonincorporation was intentional." The court concluded that awareness of the charter party did not imply an agreement to accept the terms of that extraneous agreement. *Id.* at 229.

The bill of lading for the Paraguayan sugar negotiated to Savannah states on the back: "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, are herewith incorporated." There is a space on the front of the bill of lading to indicate the date of the charter party, but it is left blank. Nor does the bill of lading identify the parties to the charter party or its place of signing.

Marinera argues that because the bills of lading for the Argentinean sugar did specifically refer to the charter party, Savannah should have known that the bill of lading for the Paraguayan sugar also incorporated the charter party. However, just as in *Amoco Oil,* the fact that the third party might be aware of the arbitration clause in the charter party does not bind them to it. Savannah could just as easily have thought that because the bill of lading for the Paraguayan sugar did not refer to the charter party, while the bills of lading for the Argentinean sugar did, that the nonincorporation was intentional.

The bill of lading did not specifically refer to the charter party. Therefore, the district court correctly found that the bill of lading did not incorporate the charter party.

III.

We conclude that the district court was correct in determining that 1) Savannah held title to the sugar at the time of the loss, 2) the bill of lading was the contract of carriage rather than the charter party, and 3) the bill of lading did not incorporate the arbitration term in the charter party. We therefore affirm the district court's order declining to stay proceedings pending arbitration.

AFFIRMED.