**SALIM OLEOCHEMICALS, INC., Plaintiff,**

v.

**M/V SHROPSHIRE, et al., Defendants.**

**No. 97 Civ. 3093(NRB).**

United States District Court, S.D. New York.

April 25, 2001.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

This maritime action is brought by plaintiff Salim Oleochemicals, Inc. ("Salim" or "plaintiff") against M/V Shropshire ("Shropshire" or "the ship") *in rem*, Bibby International Services (ION) Ltd. ("Bibby"), Langton Shipping Ltd. ("Langton"), Botany Bay Parcel Tankers International ("Botany Bay"), and Botany Bay Management Services Pty. Ltd. ("Botany Management") (collectively "defendants"). Plaintiff sues for $737,136.67 in damages, plus interest and costs, arising from contamination to a liquid glycerine shipment. Pending before the Court are three motions: (1) defendants' motion to compel arbitration in London, (2) cross motions for summary judgment on the issue of limitation of liability, and (3) plaintiff's motion for sanctions against defense counsel. For the following reasons, (1) defendants' motion to compel arbitration in London is granted, (2) parties' cross motions for summary judgment are dismissed in light of the arbitration order, and (3) plaintiff's motion for sanctions is denied.

## BACKGROUND [1]

This is a maritime action for damage to a glycerine cargo shipment from Belwan, Indonesia to the Newark, New Jersey. Botany Bay contracted with Salim Oleochemicals, Pte. ("Salim Pte")[2] a foreign

1. Unless otherwise indicated, all facts and allegations concerning this case are taken from the Parties' respective pleadings, Rule 56.1 Statements, affidavits and attached documents.

2. In light of the number of parties and the similarity of many of their names, a brief description of each may aid the reader.

*Salim Oleochemicals, Inc. ("Salim"):* Salim is the plaintiff and is in the chemical business.
*Salim Oleochemicals, Pte. ("Salim Pte"):* Salim Pte is a foreign affiliate of Salim. It signed the Contract with Botany Bay that is incorporated into the bill of lading at the heart of this suit.

*M/V Shropshire ("Shropshire" or "the Ship"):* The Shropshire carried the glycerine that became contaminated. Salim sued it in its *in rem* capacity, although it was later released when Langton posted a letter of undertaking and a $600,000 bond for it.
*Langton Shipping, Ltd. ("Langton"):* Langton was the owner of the Shropshire. It posted the letter of undertaking and $600,000 bond to free the ship from its *in rem* arrest.
*Botany Bay Tankers International ("Botany Bay"):* Botany Bay was the shipper. It signed the Contract with Salim Pte and was a signatory to the bill of lading. Botany Bay was the only defendant named in Salim's first London arbitration action.

affiliate of Salim, under a Contract of Affreightment ("Contract") signed on November 7, 1995, to deliver several shipments of glycerine to Salim in Brazil and the United States. During the course of one of these shipments, the glycerine was contaminated by ship oil. Salim covered at a substantial loss and now seeks damages for that loss.

This suit is ultimately a contract action based upon two documents: the Contract and the shipment's Bill of Lading ("Bill") into which it was explicitly incorporated. The Contract, signed by Botany Bay and Salim Pte, contains a clause governing disputes arising from the Contract. It reads in relevant part:

> "16. Law General average and charterparty arbitration to be conducted in London. English law to apply."

The Bill for the shipment at was issued on April 23, 1996. It named the Shropshire as the vessel, Salim as the cargo's consignee, and Botany Bay and Salim Pte as charterers. The Bill explicitly incorporated the Contract, stating:

> "This shipment is carried under and pursuant to the terms of the contract of Affreightment/Charter party 'C.D.A. dated 07TH NOV 1995 between BOTANY BAY PARCEL TANKERS INTERNATIONAL and SALIMOLEOCHEMICALS PTE LTD AS CHARTERERS' as Charterer, and all terms whatsoever of the said Contract of Affreightment/Charter Party *including the arbitration clause specified therein* apply to and govern the rights of the parties concerned in this shipment." (emphasis added)

*Botany Bay Management Services ("Botany Management"):* Botany Management managed Botany Bay.

Salim filed this action on April 29, 1997. Pursuant to a demand by plaintiffs, Langton had filed a letter of undertaking for the Shropshire on November 25, 1996 and posted a $600,000 bond. Defendants moved to stay the action pending arbitration in London pursuant to the arbitration clause in the Contract as incorporated in the Bill. Before the motion was fully briefed, however, the parties consented to arbitration in London. Defendants' counsel, J. Scott Provan, faxed a draft stipulation to plaintiff's counsel, Harold Kingsley, on January 7, 1998. Defendants' counsel included a cover note with the fax which read in relevant part:

> "Attached hereto is a proposed Stipulation staying the proceeding in the United States District court for the Southern District of New York pending arbitration in London.

> I have included Bibby International Services (ION) Ltd., Langton shipping Ltd. and Botany Bay Parcel tankers International as the parties to appear before the arbitrators in London. Obviously, Botany Bay Parcel Tankers International is a signatory to the COA [Contract of Affreightment] with Salim Oleochemicals Pte. Ltd. and we have included Bibby International Services (IOM) and Langton Shipping Ltd. as managers and owners of the M/V SHROPSHIRE. Salim Oleochemicals, Inc. are the purchasers of the cargo and purchased the cargo from Salim Oleochemicals Pte Ltd. and was named on the bill of lading.

> We have not included Botany Bay Management Services Pty. Ltd. as they signed the COA as managers for Botany Bay Parcel Tanker International and therefore are not part of the COA."

*Bibby Int. Services ("Bibby"):* Bibby was the Shropshire's manager.

The draft stipulation attached read in relevant part:

"[T]he parties are directed to promptly institute arbitration pursuant to Clause 16 of the Contract of Affreigtment between Botany Bay Parcel Tankers and Salim Oleochemicals Pte., Ltd., Dated November 7, 1995 as incorporated in the terms and conditions of the Tanker Bill of Lading dated April 23, 1996 for the carriage of the cargo of glycerine."

However, plaintiff's counsel returned a draft order on consent for defendants' counsel's approval that differed from defendants' proposed stipulation. The defendants' counsel made only two substantive changes to plaintiff's proposed order, removing language that stated that the parties disputed who was subject to the arbitration clause but that the arbitrator would resolve this issue. Both counsel signed the final version of the order on consent which was "so ordered" by the Court on February 24, 1998. The final order read:

"WHEREAS, defendants herein have moved for a stay pending arbitration in London under contracts of Affreightment dated November 7, 1995, between Botany Bay Parcel Tankers International and Salim Oleochemicals Pte Ltd., and the parties agree that plaintiff and Botany Bay Parcel Tankers International are subject to arbitrate thereunder, WHEREFORE, upon the subscribed consents hereunder, this action is ordered

Stayed, pending arbitration in London under the Contract of Affreightment between Botany Bay Parcel Tankers International and Salim Oleochemicals Pte Lts., dated November 7, 1995."

However, when Salim (plaintiff herein, not Salim Pte) brought the arbitration in London, it brought it only under the Contract, not under the Bill. Defendants moved to have the matter dismissed for lack of subject matter jurisdiction because Salim was not a signatory to the Contract. However, Defendants first gave Salim the opportunity to amend its claim to sue under the Bill. Salim refused to do so. The London arbitrator thereafter dismissed the case, ruling that Salim indeed was not a party to the Contract and accordingly, that the arbitration tribunal had no subject matter jurisdiction over its claim on the Contract.

Salim has now returned to this Court and seeks to have its claims heard on the merits. Defendants move to compel Salim to bring the action, under the Contract as incorporated in the Bill, in a London arbitration.

## DISCUSSION

To place the current motion in context it is helpful to consider why plaintiff has been so eager to proceed exclusively under the Contract rather than under the Bill which incorporated the Contract. The likely reason becomes clear upon reading Salim's motion to strike defendants' affirmative defense of limitation of liability under 46 U.S.C. § 1304(5) (" § 1304(5)") of the Carriage of Goods by Sea Act ("COG-SA"). If § 1304(5) applies to the shipment, it would limit defendants' liability to $500 per customary freight unit ("cfu"). The Bill provided:

"If this Bill of Lading is a document of title to which the Carriage of Goods by Sea Act [applies] ... this Bill of Lading shall have effect subject to the provisions of said Act or other similar legislation, as the case may be, which shall be deemed incorporate herein and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities ... if any term of this Bill of Lading is repugnant to the Said Act

... such terms shall be void to that extent but no further."

Thus, defendants could argue that COGSA and § 1304(5)'s $500/cfu limitation applies if Salim sues under the Bill. In light of the likely diminution in recovery if the limit applies, Salim's efforts to avoid suing under the Bill become more comprehensible.

Our analysis of the present motion has two parts. First, we must determine whether each defendant has a right to compel Salim to arbitrate under the Bill. Second, for those parties who do have a right to compel arbitration, we must decide whether Salim can defeat that right on other grounds.

## I. Basis of Right

■ Each defendant's right to compel Salim to arbitrate derives from the Bill's incorporation of the Contract. The Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *AT & T Tech., Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Courts in this circuit have regularly held that "[i]f a charter party's arbitration clause is expressly incorporated into a bill of lading, nonsignatories of the charter party who are linked to that bill through general principles of contract or agency law may be bound," provided they are put on actual or constructive notice of their arbitration obligation. *Continental U.K., Ltd. v. Anagel Confidence Compania,* 658 F.Supp. 809, 813 (S.D.N.Y.1987); *see Midland Tar Distillers v. M/T Lotos,* 362 F.Supp. 1311 (S.D.N.Y.1973); *Lowry & Co. v. S.S. Nadir,* 223 F.Supp. 871 (S.D.N.Y. 1963). In the instant case, we find that the Bill fully incorporated the entire Contract, including the arbitration clause. Indeed, the Bill singled-out notice of the arbitration clause, stating that "all terms whatsoever of the said Contract of Affeightment/Charter Party *including the arbitration clause specified therein* apply to and govern the rights of the parties concerned in this shipment" (emphasis added). *See Thyssen v. M/V Markos,* 1999 AMC 2515, 2520–21, 1999 WL 619634 (S.D.N.Y. 1999); *Amoco Overseas Co. v. S.T. Avenger,* 387 F.Supp. 589, 593 (S.D.N.Y.1975). In emphasizing the "parties [plural] concerned in this shipment," the Bill shows the clear intent of all its parties to be bound by arbitration.

■ However, it is not enough that the parties to the Bill wished to be bound by the incorporated arbitration provision. Because the right to arbitrate under the Bill is incorporated, not independent, we must determine whether the parties' exercise of it violates the arbitration clause's terms. Courts undertaking this inquiry have "consistently drawn a distinction between an arbitration clause specifically identifying the parties to which it applies, and a broader form of arbitration clause which does not restrict the parties." *In re Southwind Shipping Co.,* 709 F.Supp. 79, 82 (S.D.N.Y.1989). For a charterparty's arbitration clause to bind a party to a bill of lading who is not a charterparty signatory, the clause must not only be incorporated into the bill of lading, but also must contain "language ... broad enough to allow nonsignatories' disputes to be brought within its terms." *Lucky Metals Corp. v. M/V Ave,* 1996 A.M.C. 265, 1995 WL 575195, at *2 (S.D.N.Y.1995); *see Son Shipping Co. v. De Fosse & Tanghe,* 199 F.2d 687, 688 (2d Cir.1952). Typically, "broad" arbitration clauses explicitly govern "all disputes" arising under the charterparty. *See, e.g., Son Shipping Co.,* 199 F.2d 687 (2d Cir.1952); *Kaystone Chemical, Inc. v. Bow–Sun,* 1989 AMC 2976, 1989 WL 39498 (S.D.N.Y. Apr. 19, 1989);

*Continental U.K. Ltd. v. Anagel Confidence Compania Naviera. S.A.,* 658 F.Supp. 809, 814 (S.D.N.Y.1987), (*quoting Production Steel Co. of Illinois v. S.S. Francois L.D.,* 294 F.Supp. 200, 201 (S.D.N.Y.1968)); *Midland Tar Distillers v. M/T Lotos,* 362 F.Supp. 1311 (S.D.N.Y. 1973). In contrast, "a 'narrow' clause, which typically provides that disputes 'between owners and charterers' must be arbitrated; applies only to disputes between the particular parties identified in the clause." *Thysen v. M/V Markos,* 1999 WL 619634, 1999 AMC at 2520–21 (*citing, inter alia, Import Export Steel Corp. v. Mississippi Valley Barge Line Co.,* 351 F.2d 503, 505–06 (2d Cir.1965); *Sohtorik Shipping & Trading, Inc. v. Peter Cremer Befrachtungskontor, GMBH. & Co.,* 502 F.Supp. 143, 144–45 (S.D.N.Y.1980); *Production Steel Co. of Illinois v. S.S. Francois L.D.,* 294 F.Supp. 200, 201–02 (S.D.N.Y.1968)). The issue of which defendants may compel arbitration, therefore, turns on whether the arbitration clause in the Contract is "narrow" or "broad."

■ The Contract's arbitration clause simply states: "Law General average and charterparty arbitration to be conducted in London." We have found no precedent involving an arbitration clause with precisely this language and it does not fall neatly into either of the two categories considered above—it neither declares itself applicable to "any dispute" arising under the charterparty nor does it explicitly limit itself to the owner and charterer. However, by language (i.e., "charterparty arbitration") the clause is more akin to the "broad" language arbitration agreements than the "narrow." Furthermore, in light of the Federal Arbitration Act's ("FAA"), 9 U.S.C. § 1 et. seq., clear policy favoring arbitration agreements, the Supreme Court has instructed that any doubts concerning arbitrability "should be resolved in

favor of arbitration, whether the problem at hand is the construction of statutory language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Taking into account this strong preference, where ambiguity exists the question is whether the language is "broad enough to allow nonsignatories' disputes to be brought within its terms," *Lucky Metals,* 1995 WL 575195, at *2, not whether the terms could be construed as narrow enough to exclude them. *See also Midland Tar,* 362 F.Supp. at 1314, n. 3 (S.D.N.Y.1973) (construing ambiguous arbitration clause to be "broad" because, *inter alia,* federal law favors arbitration). In the instant case, the arbitration clause simply says that "charterparty," i.e. Contract, disputes shall be arbitrated in London. Clearly, the clause's terms do not restrict its application to specific parties or problems. In the absence of any language elsewhere in the Contract indicating that this clause should not cover all disputes arising from it, we find that it is "broad" and may be exercised by nonsignatories, as incorporated into the Bill.

■ Finally, we must ascertain whether plaintiff and each of the defendants seeking to compel arbitration was a party to the Bill. Botany Bay clearly may exercise the arbitration clause as it was both a signatory to the Contract and the Bill. The Shropshire and Langton (Shropshire's owner) are parties to the Bill and its arbitration clause by evidence of the Master's signature on the Bill. *See Thyssen v. M/V Markos,* 1999 WL 619634, 1999 AMC at 2523; *Instituto Cubano de Estabilizacion del Azucar v. T/V Golden West,* 246 F.2d 802 (2d Cir.1957) ("[W]hen the master signed the bills of lading the vessel owner became liable in personam, and the

vessel liable in rem, in the event there should be any failure in the performance of the contract of carriage the bills of lading evidenced"); *Maize Bd. of the Republic of South Africa v. M/V Courageous I*, 685 F.Supp. 420, 421 (S.D.N.Y.1988). Lastly, Salim is bound as the holder in due course of the Bill, *see Thyssen*, 1999 AMC at 2523 (*citing Son Shipping*, 199 F.2d at 688 (inferring that the holder of a bill of lading consents to the terms of the charter when the bill incorporates the charter party by reference); *Amoco Oil Co. v. M/T Mary Ellen*, 529 F.Supp. 227, 229 (S.D.N.Y. 1981); *Midland Tar*, 362 F.Supp. 1311, 1314 (S.D.N.Y.1973)), and consignee of the goods. *See id.* (*citing Kaystone Chemical*, 1989 WL 39498, at *4; *Kanematsu Corp. v. MV GRETCHEN W*, Civ.No. 93–1437–ST., 1994 WL 774554, at *3 (D.Or. Sept. 27, 1994)). In sum, all of the proper defendants have the right under the Bill to compel Salim to arbitrate its claims against them in London.[3]

## II. Plaintiff's Challenges

Salim raises several arguments to defeat certain defendants' arbitration rights. Many of these arguments mirror ones raised by Thyssen (plaintiff) in *Thyssen v. M/V Markos*, 1999 AMC 2515, in which Thyssen was represented by Salim's current counsel. Where Judge Mukasey analyzed these arguments in depth and on facts materially identical to ours, we do not feel the need to recapitulate his well-reasoned analysis and will simply cite *Thyssen*.

■ Salim first argues that the Shropshire cannot exercise its arbitration right

because English arbitrators have no jurisdiction over *in rem* claims and English law provides no similar maritime lien for cargo damage. However, Langton's letter of undertaking and later $600,000 bond moot this argument by replacing the vessel as the *res*. *See Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 252 (2d Cir. 1994); *Alyeska Pipeline Serv. Co. v. The Vessel Bay Ridge*, 703 F.2d 381, 384 (9th Cir.1983), *cert. dismissed*, 467 U.S. 1247, 104 S.Ct. 3526, 82 L.Ed.2d 852 (1984) ("A plaintiff's lien for the claims alleged against the vessel is transferred to the security posted."); *J.K. Welding Co. v. Gotham Marine Corp.*, 47 F.2d 332, 334 (S.D.N.Y.1931). The London arbitrator has jurisdiction over the bond and, accordingly, may arbitrate Salim's claims against the Shropshire.

■ Next, Salim contends that its claims against Bibby and Botany Management lie in tort, not in contract under the Bill, and thus are not subject to the Bill's arbitration clause. Specifically, plaintiff seeks to bring its claims against Bibby and Botany Management under negligence theories. In *Thyssen*, Judge Mukasey rejected plaintiff's attempt to avoid an arbitration clause in a bill of lading by casting the claim in tort. Consistent with Second Circuit precedent, he found that the arbitrability of a claim does not turn on the legal theory under which it its pled, but on the claim's relationship to the subject matter of the arbitration clause. *See Thyssen*, 1999 AMC at 2524 (*citing Collins & Aikman Prods. Co. v. Building Sys.*, Inc., 58 F.3d 16, 20 (2d Cir.)) ("If allegations of the complaint 'touch matters' covered by the arbitration agreement, those claims must

---

**3.** Bibby and Botany Management acted as disclosed agents and, accordingly, are not proper defendants in this action. *See, Seguros Banvenez, S.A. v. S/S Oliver Drescher*, 761 F.2d 855, 860 (2d Cir.1985) ("When an agent makes a contract for a disclosed principal, it

becomes neither a party to the contract nor liable for the performance of the contract. *Restatement (2d) of Agency* §§ 320, 328. Accordingly, it is not liable if the contract is breached. *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 808 (2d Cir.1971).").

be arbitrated, regardless of the legal labels attached to them."); *In re Spill by the Amoco Cadiz*, 659 F.2d 789, 794 (7th Cir. 1981) ("Whether a particular claim is arbitrable depends not upon the characterization of the claim, but upon the relationship of the claim to the subject matter of the arbitration clause."). In the instant case, Salim's claims against Bibby and Botany Management plainly are for damage to the cargo during it shipment—precisely the subject matter and purpose of the Bill and its arbitration clause. Salim cannot escape the Bill's arbitration clause simply by couching the claim in tort instead of contract, for "[w]ere the rule otherwise, a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claims." *In re Spill by the Amoco Cadiz*, 659 F.2d at 794.

Finally, Salim argues that the Court's order on consent of February 24, 1998 constitutes "the law of the case" and, therefore, that defendant is precluded from re-litigating the issue at this time. Salim misapprehends the basic meaning of the "law of the case" doctrine. The law of the case is a discretionary doctrine and "posits that where a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618–19, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). This Court made no decision upon a rule of law. Defendant's motion to stay the complaint pending arbitration was never fully briefed and this Court never issued any decision on the merits. The February 24, 1998 order on consent embodied nothing more than this Court's approval and ordering of the parties' agreement. Moreover, were that order considered the law of the case, it would make no difference. It was this Court's understanding that the order anticipated Salim bringing its claims under the Contract's arbitration clause as incorporated into the Bill. Had we understood that the consent order was designed to allow Salim to proceed in London against Botany Bay under the Contract alone, we would never have signed it. Thus, even if this Court's order on consent were a decision of law, it would still be subject to the court's discretion and Salim would find no relief from arbitrating in London.

### CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration in London is granted. The parties are hereby ordered to proceed to arbitration in London pursuant to the arbitration clause in the Contract, as incorporated into the Bill. The parties' cross-motions for summary judgment on the issue of limitation of liability are dismissed as the issue will be resolved by the London arbitrator.

Plaintiff counsel's request for sanctions against defendant's counsel is at a minimum surprising. Plaintiff's attempt to arbitrate in London only under the Contract, when Salim was not a party to the Contract, and subsequent refusal to amend its petition to proceed under the Bill alone (and thus to undermine the earlier consent to arbitrate), borders on abuse of the judicial process. Furthermore, in opposing defendants' motion to compel arbitration, plaintiffs' counsel has failed to cite key adverse, if not controlling, precedent in *Thyssen v. M/V Markos*, 1999 AMC 2515, a case of which plaintiff's counsel is keenly aware having represented Thyssen in that action. In contrast, defendant's position is, in our view, correct and reasonable. Accordingly, plaintiff's motion for sanctions is denied.

**IT IS SO ORDERED.**