EMILIO M. GARZA, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority opinion insofar as it dismisses the bailment claim brought by Cargill Ferrous, International (“Car-gill”) against COSCO (Singapore) Pte., Ltd. (“COSCO”), the manager of the MTV SEA PHOENIX (“SEA PHOENIX” or “vessel”). As the majority opinion concludes, the parties must seek a certification from the district court pursuant to Federal Rule of Civil Procedure 54(b) in order for us to have jurisdiction over the bailment claim. However, I cannot agree with the majority opinion’s treatment of file other two issues in this case. First, unlike the majority opinion, I conclude that there was no arbitration agreement between Serene Sky Shipping, Inc. (“Serene”) and Cargill. As a result, I would affirm the district court’s dismissal of Serene’s motion to compel arbitration. Second, I believe that, absent a Rule 54(b) certification, we lack jurisdiction to review the district court’s decision to compel arbitration between Western Bulk Carriers (“Western Bulk”) and Cargill.
I
It might be useful to review the facts of this case. Serene, the owner of the SEA PHOENIX, acting through an intermediary (GTS Steamship (Panama) Inc.), time-chartered the vessel to Western Bulk.[1] Western Bulk voyage-chartered the SEA PHOENIX to Cargill.[2] Cargill chartered the vessel in order to transport some steel coils from Ventspils, Latvia to New Orleans, Louisiana.
The steel coils arrived in a damaged condition, so Cargill brought this action against Serene and Western Bulk.[3]- The district court granted Western Bulk’s motion to compel arbitration against Cargill, so Western Bulk did not go to trial. The district court denied Serene’s motion to compel arbitration against Cargill. After a bench trial involving Serene and Cargill, the district court found that Serene was negligent in transporting the steel coils (a finding that no party disputes). The court *706 ordered Serene to pay $57,182,15 to Car-gill.
II
The majority opinion holds that Serene can arbitrate its dispute with Cargill. As the majority opinion apparently recognizes, in order for Serene to compel arbitration, Serene must have had an agreement to arbitrate with Cargill. See Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp., 289 F.3d 373, 376 (5th Cir.2002) (“Due to its inherently contractual nature, arbitration may be ordered only for a dispute that the parties have agreed to arbitrate.”). Serene asserts that it can arbitrate its claims with Cargill pursuant to an arbitration clause contained in the voyage charter (or “charter party”) between Cargill and Western Bulk.[4] However, Serene was not a signatory party to the charter party. Thus, as the majority opinion appears to conclude, Serene cannot automatically take advantage of the arbitration clause in that charter party.
The only contract between Serene and Cargill can be found in the bills of lading issued by Serene to Cargill. As a result, Serene can take advantage of the arbitration clause in the charter party only if the bills of lading incorporated the charter party. We have stated that “[a] bill of lading can incorporate a charter party if the bill of lading specifically refers to the charter party.” Cargill Inc. v. GOLDEN CHARIOT MV, 31 F.3d 316, 318 (5th Cir.1994). The majority opinion asserts that there was sufficient language in the bills of lading to incorporate the charter party (and, thus, the arbitration agreement within the charter party). I disagree.
We have stated that, in order for a bill of lading to incorporate a charter party, the bill should contain the name and date of the charter party. See id. Along those lines, courts have consistently concluded that a bill of lading incorporated a charter party when the bill referred to the date of the charter party and at least one additional piece of information. See, e.g., Duferco Steel Inc. v. M/V KALISTI, 121 F.3d 321, 323-25 (7th Cir.1997) (finding incorporation when the name and the date of the charter party were included in the bills of lading); Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687, 688 (2d Cir.1952) (finding incorporation when the date and the names of the parties to the charter party were included); Salim Oleochemicals, Inc. v. M/V SHROPSHIRE, 169 F.Supp.2d 194, 196 (S.D.N.Y.2001) (observing that the bill of lading “explicitly incorporated” the charter party by referring to the date and the names of the parties to the charter party).
In certain cases, we have found that a bill of lading contained sufficient information to incorporate a charter party when the bill referred solely to the date of the charter party. Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai, 141 F.3d 234, 237 (5th Cir.1998) (“While it would have been preferable for this clause in the bill of lading to have been more specific *707 and detailed, it passes muster, given the facts of this case.”); see also Cont’l U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A., 658 F.Supp. 809, 813 (S.D.N.Y.1987) (“As between these parties, citation to the date alone was sufficient to clearly incorporate the subcharter’s provisions.”).
In the present case, however, the bills of lading did not refer to the name or the date of the charter party. In such situations, we have been unwilling to find incorporation. GOLDEN CHARIOT, 31 F.3d at 318 (“[Wjhere the date and name of the charter party is left blank, there is no incorporation.”); see also Lafarge Corp. v. M/V MACEDONIA HELLAS, 2000 WL 687708 at *5 (E.D.La. May 24, 2000) (“In this case, the bill of lading nowhere specified which charter party’s terms were purportedly being incorporated. In fact, the party who filled out the bill of lading ignored blanks specifically seeking information on the date of the relevant charter party.”); Mitsui & Co. v. M/V HERMANN SCHULTE, 1996 WL 365660 at *2 (E.D.La. July 1, 1996) (Clement, J.) (“[T]he party who filled out the bill of lading ignored blanks specifically seeking information on the date, place, and parties of the relevant charter party.... Given the clear law providing that at least minimal identification of the charter party is a precondition to its incorporation into a bill of lading, such an omission can only be regarded as a decision not to seek incorporation of the charter party.”).
Cargill Inc. v. GOLDEN CHARIOT MV, 31 F.3d 316 (5th Cir.1994), and the cases applying it, make clear that when a bill of lading fails to specify either the name or the date of the charter party, the bill does not incorporate the charter party. Thus, GOLDEN CHARIOT would seem to make our job in this case quite simple: the bills of lading failed to include sufficiently specific terms of incorporation, so they did not incorporate the voyage charter (or its arbitration clause). As a result, we should hold (as did the district court) that Serene cannot compel arbitration of its dispute with Cargill.
The majority opinion, however, complicates the issue by asserting that the rule in GOLDEN CHARIOT is inapplicable in the present context. In order to understand the majority opinion’s reasoning, it may help to review the facts of GOLDEN CHARIOT. In that case, Savannah Foods (“Savannah”) entered into a contract to purchase sugar from Cargill. Id. at 316. Cargill entered into a voyage charter with Marinera (the owner of the GOLDEN CHARIOT) to transport the sugar from Argentina to Georgia. Id. The charter party between Marinera and Cargill contained an arbitration clause stating that “any and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York.” Id. at 317. When the cargo was loaded, Marinera delivered bills of lading to Cargill, which Cargill in turn “negotiated and transferred” to Savannah. Id. at 316-17.
The sugar arrived in a damaged condition, so Savannah and Cargill sued Marin-era. Id. at 317. This Court found that Savannah, as the title owner of the sugar at the time of loss, was the proper party plaintiff. Id. at 317-18. Marinera attempted to force Savannah to arbitrate the dispute. Id. at 317. Savannah, of course, was not a party to the voyage charter between Cargill and Marinera, so Marin-era could not automatically require Savannah to submit to arbitration. The bills of lading constituted the only contract between Marinera and Savannah. Id. at 318. However, Marinera insisted that the bills of lading incorporated the charter party and its arbitration clause. As noted, we held that the bills of lading did not include sufficiently specific language of incorporation. We declared that “[a] bill of lading *708 can incorporate a charter party if the bill of lading specifically refers to the charter party. However, where the date and name of the charter party is left blank, there is no incorporation.” Id. at 318 (citation omitted).
The majority opinion asserts that GOLDEN CHARIOT is distinguishable from the instant case. The opinion states that “[t]he GOLDEN CHARIOT test does not ... apply when the bills of lading remain in the hands of a party to the voyage charter.” The majority opinion appears to rely on the factual distinctions between GOLDEN CHARIOT and the present case. In GOLDEN CHARIOT, the party opposing arbitration (Savannah) was not a party to the charter party containing the arbitration clause. As a result, unless the bills of lading included specific language incorporating the charter party, Savannah would not have been on notice that it might have to arbitrate its claims. In the present case, by contrast, the party opposing arbitration (Cargill) was a signatory party to the voyage charter, and thus was on notice of the arbitration clause. The majority opinion appears to conclude that, if the party opposing arbitration was a signatory party to the agreement containing the arbitration clause, the bills of lading need not include very specific language of incorporation.[5]
The majority opinion appears to reason that, because Cargill negotiated the agreement with the arbitration clause, Cargill was on notice that it might have to arbitrate any dispute arising out of this shipment. Thus, the majority opinion concludes, Cargill should be required to arbitrate its dispute with Serene. However, this reasoning is problematic. It is certainly fair to say that Cargill was on notice that it would have to arbitrate its claims against Western Bulk (the other party to the agreement containing the arbitration clause). It is not, however, necessarily accurate to say that Cargill was on notice that it might have to arbitrate its claims against Serene.
The majority opinion asserts that Cargill was on notice that it would have to arbitrate its dispute with Serene because the bills of lading stated that “[a]ll terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clauses, are herewith incorporated.” The majority opinion appears to reason that, because the bills of lading mentioned an arbitration clause, Cargill should have known that the bills incorporated the arbitration clause in the voyage charter. The majority opinion apparently overlooks the fact that this case involved multiple charter parties. The voyage charter was not the only agreement containing an arbitration provision; the time charter between Serene and Western Bulk also included an arbitration clause.[6] It is difficult to imagine how Car- *709 gill could have inferred that the above provision in the bills of lading referred to the arbitration clause in the voyage charter as opposed to some other arbitration provision. See Joo Seng Hong Kong Co. v. S.S. UNIBULKFIR, 493 F.Supp. 35, 40 (S.D.N.Y.1980) (stating, when the bills of lading failed to include the name or the date of a specific charter party, that “[s]ince there are three charter parties involved in this shipment, ... the Court cannot, with any degree of certainty, conclude that the ... provision [in the bills of lading] specifically refers to [a particular charter party]”).
Perhaps anticipating this concern, the majority opinion points out that the voyage charter between Cargill and Western Bulk “require[d] all bills of lading ... to incorporate ... the voyage charter’s arbitration clause.” The majority opinion thereby suggests that the terms of the voyage charter itself should have alerted Cargill to the fact that the bills of lading incorporated the arbitration clause in the voyage charter. The majority opinion appears to reason that, because Cargill was aware that the bills of lading were supposed to incorporate the voyage charter (and its arbitration clause), Cargill should have assumed that any bills of lading it received (regardless of the language on the bills themselves) did incorporate that particular charter party.
It may be that the bills of lading should have incorporated the charter party between Western Bulk and Cargill. That does not, however, mean that the bills of lading did incorporate the charter party. The bills of lading could only legally incorporate the charter party if they used language that, under this Court’s precedent, referred specifically to the voyage charter between Western Bulk and Cargill. Under our precedent, the bills of lading did not include sufficiently specific language of incorporation. See GOLDEN CHARIOT, 31 F.3d at 318. The majority opinion’s conclusion to the contrary, in my view, cannot be reconciled with our case law.
The majority opinion attempts to demonstrate that its holding is consistent with our precedent. The majority opinion quotes dicta from Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai, 141 F.3d 234 (5th Cir.1998), stating that “precedent allows for quite a bit of leeway in the drafting of [incorporation] clauses, and does not require a punctilious degree of specificity.” Id. at 237.[7] However, Steel Warehouse provides no support for the holding of the majority opinion. In Steel Warehouse, the parties included the date of the charter party. Id. Thus, that case required some degree of specificity. Steel Warehouse does not support the majority opinion’s determination that a bill of lading can incorporate a charter party without referring to either the date or the name of the charter party.
Nevertheless, the majority opinion concludes that, because Cargill was a party to a charter party with an arbitration clause, the bills of lading in this case included *710 sufficiently specific language of incorporation. The majority opinion thus holds that, when the party opposing arbitration was a party to an arbitration agreement, the bills of lading need not include any specific language of incorporation to force that party to arbitrate its claims. In essence, the majority opinion establishes that, when the holder of the bills of lading was a party to an agreement with an arbitration clause, the holder (in this case, Cargill) bears the burden of finding out whether the bills of lading have in fact incorporated that particular arbitration clause.
I do not see the pohcy justification for such a rule. In my view, it makes more sense to put the burden on the issuer of the bills of lading to ensure that the bills contain sufficient information to notify any holder that the bills incorporate a particular charter party (and its arbitration clause).[8] The issuer of the bills of lading has control over the terms of the bills of lading. Thus, the issuer is better positioned to ensure that the bills include particular terms of incorporation.[9] Cf. SPM Corp. v. M/V MING MOON, 965 F.2d 1297, 1302 (3d Cir.1992) (observing that, if the drafter of the bill of lading had wanted a specific term, the drafter “could easily have imposed that limitation”); cf. also West India Indus., Inc. v. Tradex, Tradex Petroleum Servs., 664 F.2d 946, 951 n. 9 (5th Cir.1981) (“Courts construe a bill of lading strictly against the party that drafted it”).
In this case, the district court found that New England Shipping Company, the party that transmitted the bills of lading to Cargill, was the agent of Serene.[10] Thus, Serene (acting through its agent) issued the bills of lading. As a result, in my view, the burden was on Serene to ensure that the bills of lading included sufficiently specific information to incorporate the voyage charter party (and its arbitration clause). Because Serene did not include sufficient information in the bills of lading, Serene should not now be permitted to force Car-gill to arbitrate their dispute.[11]
*711 III
The majority opinion holds that this Court lacks jurisdiction to review the district court’s grant of Western Bulk’s motion to compel arbitration. The opinion observes that, under the Federal Arbitration Act (FAA), an appellate court does not have jurisdiction over an order compelling arbitration when the district court stays the underlying litigation. See 9 U.S.C. § 16(b); Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 87 n. 2, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (noting that when a district court orders the parties to arbitrate their claims, and enters “a stay instead of a dismissal ..., that order [is not] appealable”). The majority opinion determines that, in this case, the district court stayed the litigation between Cargill and Western Bulk. Therefore, the majority opinion concludes that this Court cannot review the district court’s grant of Western Bulk’s motion to compel arbitration.
In my view, it is premature for us to decide this issue of law. I believe that, absent a Rule 54(b) certification, we lack jurisdiction even to decide whether we have jurisdiction under the FAA.
The Rule 54(b) problem is created by the presence of Western Bulk in this case. Rule 54(b) states that “when multiple parties are involved [in an action], the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.” Fed. R. Crv. P. 54(b). If the district court does not expressly direct the entry of judgment, then its ruling “shall not terminate the action as to any of the claims or parties,” and is “subject to revision at any time[.]” Id. Therefore, absent a Rule 54(b) certification by the district court, its ruling is not a final decision for the purposes of appeal, and we lack jurisdiction over it. See Witherspoon v. White, 111 F.3d 399, 402 (5th Cir.1997) (“Until the district court makes an express determination [pursuant to Rule 54(b) ] that no just reason for delay exists and expressly directs entry of judgment, finality will not attach to an order that disposes of some but not all of the defendants.”). In this case, the district court did not dismiss Western Bulk from the dispute. Because the court has not *712 made a decision as to Western Bulk, its ruling has not automatically terminated the action as to any of the claims or parties.
The majority opinion agrees that Western Bulk’s presence in the dispute creates a Rule 54(b) problem. For that reason, the majority opinion holds that we must dismiss Cargill’s bailment claim against COSCO pursuant to Rule 54(b). I concur in that part of the judgment. Conversely, the majority opinion recognizes that there is no Rule 54(b) problem regarding the first issue in this case (whether the district court properly denied Serene’s motion to compel arbitration). The FAA specifically gives this Court jurisdiction over a district court’s refusal to order arbitration. See 9 U.S.C. § 16(a)(1)(C); see also Walker v. J.C. Bradford & Co., 938 F.2d 575, 576 (5th Cir.1991) (observing that the court had jurisdiction over an interlocutory appeal from the district court’s denial of a motion to compel arbitration). The statute thus appears to make the district court’s decision denying the motion to compel arbitration a final decision, even absent a Rule 54(b) certification.
That reasoning, however, does not apply to the district court’s grant of Western Bulk’s motion to compel arbitration. Under the FAA, when the district court compels arbitration, its order is not always deemed a final decision. As the majority opinion observes, when the district court stays the underlying litigation, the FAA does not give us jurisdiction to review the district court’s order. By contrast, when the district court “dismisses” or “closes” a case, we have jurisdiction to review its order on the merits. See Am. Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 707-08 (5th Cir.2002) (holding that a district court’s order compelling arbitration is ap-pealable if the court either dismisses or closes a case). As a result, when a party appeals an order compelling arbitration, we must carefully examine the nature of the district court’s decision in order to determine if we have jurisdiction under the FAA. In my view, until the district court issues a Rule 54(b) certification, we lack the power to engage even in this initial analysis. In other words, we lack jurisdiction under Rule 54(b) to determine whether we have jurisdiction under the FAA. Thus, I believe that the wisest course would be to dismiss this issue without prejudice, and give the parties an opportunity to request a Rule 54(b) certification from the district court. See Ringwald v. Harris, 675 F.2d 768, 771 (5th Cir.1982) (observing that dismissal for lack of Rule 54(b) certification is without prejudice); see also Road Sprinkler Fitters Local Union v. Cont’l Sprinkler Co., 967 F.2d 145, 152 (5th Cir.1992) (“[T]he parties always have an avenue open to seek Rule 54(b) certification.”).
For the above reasons, I respectfully dissent.

. A “time charter” is a charter for a specified period of time, rather than for a specific task or voyage. See Black’s Law Dictionary 1483 (6th ed.1990).

. A voyage charter is a charter for a particular task or voyage. See id. at 1577.

. Cargill also filed suit against the SEA PHOENIX in rem, but the district court dismissed that claim for lack of service of process and for failure to prosecute. In addition, Cargill filed suit against COSCO, the manager and operator of the vessel, and Coastal Cargo Company, Inc., the stevedoring company that unloaded the SEA PHOENIX in New Orleans. The district court dismissed Cargill’s claims against those parties as well. COSCO does, however, join Serene in appealing the district court's denial of Serene’s motion to compel arbitration.

. The relevant clause of the charter states:
All disputes from time to time arising out of this contract shall, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be members of the Baltic Exchange and engaged in the Shipping and/or Grain Traders one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. Any claim must be made in writing and Claimant’s Arbitrator appointed within nine months of final discharge and where this provision is not complied with the claim shall be deemed to be waived and absolutely barred. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his acting be taken within two weeks of his appointment. Arbitration is in London according to English law.

. The majority opinion relies primarily on two decisions from the Southern District of New York to support its position. See Cargill B.V. v. S/S OCEAN TRAVELLER, 726 F.Supp. 56, 59 (S.D.N.Y.1989) (finding that bills of lading need not "identify the charter party with specificity” in order to compel "the very party that negotiated the charter” to arbitrate its claims); State Trading Corp. of India, Ltd. v. Grunstad Shipping Corp. (Belgium) N.V., 582 F.Supp. 1523, 1524-25 (S.D.N.Y.1984) (observing that "the bill of lading did not name the parties to the charter party it was attempting to incorporate, or state the date or place of its making,” but finding that the language of incorporation was sufficiently specific, particularly because "it is a signatory to the charter party here that is seeking to avoid the incorporation clause”).

. As noted above, Serene time-chartered the vessel to Western Bulk via an intermediary (GTS Steamship (Panama) Inc.). The arbitration clause in the time charter provides;
That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at *709 London, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men who shall be members of LMAA and conversant with shipping matters. This Charter Party to be governed by and construed in accordance with English law.

. It is unclear whether this statement in Steel Warehouse is entirely consistent with GOLDEN CHARIOT. Of course, to the extent the decisions are inconsistent, the earlier precedent (GOLDEN CHARIOT) prevails. See H & D Tire and Auto.-Hardware, Inc. v. Pitney Bowes Inc., 227 F.3d 326, 330 (5th Cir.2000) ("When panel opinions appear to conflict, we are bound to follow the earlier opinion.”).

. That is particularly true in cases, such as the present one, that involve multiple charter parties. The issuer must make certain that the bills of lading notify holders that a specific charter party applies.

. Our decision in GOLDEN CHARIOT provides support for this analysis. In that case, the issuer of the bills of lading (Marinera) attempted to enforce an arbitration agreement against the holder of the bills of lading (Savannah). 31 F.3d at 316-17. As discussed above, we found that the bills of lading did not contain sufficient information to incorporate the arbitration clause in the charter party. Id. at 318; see also Mitsui, 1996 WL 365660, at *2 (Clement, J.) (noting that “[t]he party who filled out the bill of lading ignored blanks specifically seeking information on the date, place, and parties of the relevant charter party,” and concluding that "such an omission can only be regarded as a decision not to seek incorporation of the charter party”).

. In its brief and at oral argument, Serene appeared to assert that New England Shipping was not Serene’s agent, but was instead Cargill’s agent. Generally, we review the district court's finding of an agency relationship for clear error. Strachan Shipping Co. v. Dresser Indus., Inc., 701 F.2d 483, 486-87 (5th Cir.1983); see Moriarty v. Glueckert Funeral Home, Ltd., 155 F.3d 859, 864 (7th Cir.1998). Serene has not, however, supported its assertion with any legal argument. Therefore, we need not consider Serene's contention. See Fed. R.App. P. 28(a)(9)(A); Kane Enter. v. MacGregor (USA) Inc., 322 F.3d 371, 376 n.3 (5th Cir.2003) (observing that issues inadequately briefed are deemed waived); see also Matter of T-H New Orleans Ltd. P'ship, 116 F.3d 790, 796 (5th Cir.1997) ("Pursuant to [Federal Rule of Appellate Procedure] 28, this Court has found that contentions not briefed are waived and will not be considered on appeal.”) (internal quotation marks omitted). We should thus accept the district court’s conclusion that New England Shipping was Serene’s agent.

.The majority opinion responds to the reasoning in this dissent by asserting that there is a critical distinction between negotiated and *711 non-negotiated bills of lading. The majority opinion reasons that bills of lading should include language of incorporation when the bills are negotiated to a third party (presumably, a party that was not a party to the agreement with the relevant arbitration clause). I agree with that premise. However, then the majority opinion goes on to conclude that bills of lading need to contain sufficient language of incorporation only when they are negotiated. Therefore, the opinion holds, because the bills of lading issued by Serene to Cargill were not negotiated to a third party, the bills did not need to include any language of incorporation.
The majority opinion's conclusion in this case does not follow from its premise. As I said, I agree that, when bills of lading have been negotiated to a third party, the bills should include sufficient language of incorporation to notify the third party that it might have to arbitrate its claims. However, that does not mean that bills of lading need not include language of incorporation in any other case. There are many other scenarios in which the holder of the bills of lading will not be on notice that an arbitration agreement applies (or which arbitration agreement applies) unless the bills of lading include sufficient language of incorporation. The present case is an excellent example: because there were multiple arbitration agreements, the bills of lading needed to include sufficient language of incorporation to notify the holder (i.e., Cargill) which arbitration agreement applied. In my view, in such cases (where there is "confusion” as to whether a particular arbitration agreement applies) the issuer of the bills of lading should be required to include sufficient language of incorporation to inform any holder that it might be required to arbitrate its claims.