**VENTURA MARITIME CO., LTD.**

v.

**ADM EXPORT COMPANY.**

No. CIV. A. 98–2804.

United States District Court,
E.D. Louisiana.

April 9, 1999.

Robert Hugh Murphy, Chalres Lewis Whited, Murphy, Rogers & Sloss, New Orleans, LA, for Plaintiff.

Edward Joseph Koehl, Jr., Richard D. Bertram, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, for Defendant.

DUVAL, District Judge.

Before the court is a Motion to Stay Litigation and Compel Arbitration, filed by plaintiff/counter-defendant, Ventura Maritime, Co., Ltd. ("Ventura"). For the reasons stated below, the motion is granted.

## BACKGROUND

Plaintiff/counter-defendant, Ventura, is the sole owner of the M/V OLGA, a Maltese flag bulk cargo vessel engaged in international commerce. ADM Export Company ("ADM") was the sole owner of a cargo of approximately 15,000 metric tons of soybean meal that was loaded in bulk aboard the M/V OLGA at the ADM/ Growmark Destrehan facility on September 20 and 21, 1998. The cargo was valued at approximately $2.75 million and was to be delivered to a receiver in Algeria. The Algerian receiver had contracted with Medifret, who had entered into a charter with International Maritime Services ("IMS"), the time charterer of the M/V OLGA.

Loading began at around 1:30 p.m. on September 20 and was completed by 1:15 p.m. the next day. Near the end of the loading process, the M/V OLGA's master observed live insects in the soybean meal. The master and Ventura immediately notified ADM and IMS of the problem. ADM had the cargo fumigated that afternoon. Because of the fumigation, the M/V OLGA's master refused to issue a "clean" mate's receipt for the cargo. Instead, the master issued a mate's receipt that stated "cargo fumigated due to live infestation." *Ventura Exhibit A*. A clean mate's receipt is a prerequisite for a clean bill of lading, which was a condition of ADM's grain sales contract with the Algerian receiver. The master refused to issue a clean mate's receipt because he felt that doing so would be misleading and a fraud on the cargo's purchasers. It was Ventura's position that issuing a clean mate's receipt and clean bill of lading would violate the Carriage of Goods by Sea Act ("COGSA"), which requires the owners to issue a bill of lading that accurately describes "the apparent order and condition of the goods ..." 46 U.S.C.App. § 1303(3)(c), and that doing so would also jeopardize the OLGA's P & I coverage.

On September 22, 1998, Ventura Maritime filed a petition for declaratory judgment. On September 23, 1998, ADM filed a Rule D action in Section "T" of this court and seized the cargo. The cases were consolidated on October 8, 1998. This court scheduled an expedited hearing on the declaratory judgment action for October 2, 1998, but on October 1, ADM was able to sell the cargo to a receiver in Ireland. The Irish receiver agreed to accept a bill of lading with the "cargo fumigated due to live infestation" clause that the Algerian receiver had been unwilling to accept. On October 1, 1998, ADM entered into a voyage charter of the M/V

OLGA with IMS, its time charterer.[1] The vessel sailed to Ireland that day, and the cargo was discharged. When the cargo was discharged, it was free of infestation, dead or alive.

The bill of lading was a Baltimore Form C Berth Term Grain Bill of Lading. The bill was originally dated September 21, 1998, and also states that the date the soybean meal cargo was on board was September 21, 1998. The date next to the line reading "all terms, conditions and exceptions as per charter party" is October 1, 1998. The bill memorializes the "cargo fumigated due to live infestation" language from the mate's receipt. It lists the delivery port as Dublin. Had the cargo been shipped to Algeria instead of Ireland, the same bill of lading would have been used, but a port in Algeria would have been listed in place of Dublin, the date on which the "all terms, conditions and exceptions as per charter party" was added presumably would have been earlier than October 1. Neither party has argued that any of the other terms of the bill of lading would have been any different.

Paragraph 9 of the bill of lading incorporated the "Centrocon" charter-party Arbitration Clause, which reads as follows:

All disputes from time to time arising out of this contract shall, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be Members of the Baltic and engaged in the Shipping and/or Grain Trades, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. Any claim must be made in writing and Claimant's Arbitrator appointed within three months of final discharge and where this provision is not complied with the claim shall be deemed

to be waived and absolutely barred. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his acting be taken before the award is made.

ADM alleges that the arbitration clause in the bill of lading for the New Orleans–Ireland shipment cannot be used to compel arbitration of its counter-claim, which concerns money damages resulting from the holding of the cargo in New Orleans *prior* to the acceptance of the bill of lading. Ventura asserts that the arbitration clause applies to the case at hand, because underlying issue of ADM's counter-claim is the vessel's refusal to issue a clean bill of lading.

## LEGAL ANALYSIS

### 1. Is ADM's Counter–Claim Subject to the Arbitration?

A bill of lading is a document which is signed by the carrier or his agent acknowledging that goods have been shipped on board a specific vessel that is bound for a particular destination and stating the terms on which the goods are to be carried. Thomas J. Schoenbaum, *Admiralty and Maritime Law,* 2d Ed., § 10–11. While a bill of lading serves many of purposes, some of them contractual (*see id.*), an issued bill of lading is not required for a meeting of the minds between a cargo owner and a vessel owner to have occurred. In *Luckenbach S.S. Co. v. American Mills Co.,* 24 F.2d 704 (5th Cir.1928), the leading case on the subject, the court held the cargo owner to a clause in a bill of lading exempting the carrier from liability for loss of goods by fire, even though the bill of lading had not been yet issued when a fire occurred, destroying the cargo. *Id.* at 705. The court held that the cargo

1. Also on October 1, 1998, ADM filed its answer and counterclaim (for damages and expenses due to the holding of its cargo aboard the M/V OLGA for several days) in the declaratory action complaint before this court. Apparently not realizing that ADM had filed a

counterclaim, Ventura Maritime subsequently attempted to dismiss the entire action. ADM apprised the court that it still had a live counterclaim, and the court subsequently set a trial date for July 1999.

owner was "presumed to know the law, and therefore must have known that the terms and conditions on which its goods were received and would be transported would be contained in a bill of lading to be issued later." *Id.* The court further explained that "an implied understanding arose from common business experience that the carrier would issue such bill of lading as it was its custom to issue to shippers in the usual course of its business." *Id, citing The Caledonia* (C.C.Mass.) 43 F. 681, 705, *aff'd.*, 157 U.S. 124, 15 S.Ct. 537, 39 L.Ed. 644.

ADM attempts to distinguish *Luckenbach* and its progeny by the fact that the carrier in *Luckenbach* was a common carrier and the carrier here is a private one. But the pivotal fact in *Luckenbach* is not the carrier's common carrier status but that the carrier's bill of lading "was in accordance with it standard form, issued to all shippers alike, and was not made to fit a special case, in order to escape liability that had already occurred." *Id.* Here, had Ventura altered the usual bill of lading to include an unanticipated arbitration clause and tried to hold ADM to that clause even though the bill was never issued, Ventura might not be entitled to arbitration. ADM, however, was fully aware that the arbitration clause in question was a part of the bill of lading that would issue if the cargo was shipped to Algeria. That the destination was ultimately changed to Dublin, Ireland, does not change ADM's understanding and acceptance of the arbitration clause.

ADM seeks to enforce the agreement that would have been memorialized and finalized by a bill of lading specifying Algeria as the cargo's destination had the parties so agreed. It has brought suit for violation of COGSA, which governs bills of lading, and because the mate of the OLGA insisted on clausing the bill of lading. It seeks, then, the benefits of receiving a clean bill of lading, and, as such, is likewise bound by the arbitration clause in that bill of lading. *Mitsui & Co. (U.S.A.), Inc. v.*

*MIRA M/V,* 111 F.3d 33, 36 (5th Cir.1997) (in filing lawsuit for cargo damages under bill of lading, owner of cargo accepted terms of bill of lading, including non-negotiated forum selection clause).

ADM protests that it was ADM Shipping, and not ADM Export, that entered into a Voyage Charter with IMS, and that the bill of lading that was subsequently delivered to ADM on October 1 did not include ADM Export or ADM Shipping as a party. ADM Export argues that it was therefore not a party to the bill of lading and that its terms are not binding on ADM Export.

■ Courts, however, read arbitration clauses broadly, because the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, is a "Congressional declaration of a liberal policy favoring arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The FAA expressly provides for courts to enforce arbitration clauses in bills of lading. 9 U.S.C. §§ 1, 2. Arbitration clauses indicating foreign fora are enforceable. *Vimar Seguros v. M/V SKY REEFER,* 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995).

■ A "broad" clause that provides, as does the clause at issue here, that "all disputes arising out of this contract" are to be submitted to arbitration covers a dispute involving non-signatories to the charter party if the non-signatories are "linked to that bill through general principles of contract or agency law." *Nissho Iwai Corp. v. the M/V THALIA,* 1996 A.M.C. 723, 1996 WL 31894 at *3–4 (E.D.La.1996). ADM certainly felt that it had something to gain from receiving a clean bill of lading, as it has counter-claimed in Ventura's Declaratory Judgment action for damages due to the M/V OLGA's failure to issue a proper bill of lading as ADM understood to be required under their agreement. In fact, a clean bill of lading was a condition of ADM's grain sales contract with the

Algerian receiver. The cargo sent to Dublin was the same cargo that would have been sent to Algeria, and the cargo was sent in the same vessel in which it was originally loaded. The only terms in the bill of lading that were altered when the destination of the cargo changed were the name of the destination city and the date of the shipment. The court finds that ADM was sufficiently linked to the bill of lading that was ultimately issued to be bound by its arbitration clause.

## 2. Did Ventura Waive its Right to Arbitration by Filing its Declaratory Action Suit?

■ There is no settled rule as to what act or omission constitutes a waiver of an agreement to arbitrate. *Howard Hill, Inc. v. George A. Fuller Co., Inc.,* 473 F.2d 217, 218 (5th Cir.1973). The question of waiver depends on the circumstances of each case and usually must be determined by the trier of facts. *Burton–Dixie Corp. v. Timothy McCarthy Construction Co.,* 436 F.2d 405, 408 (5th Cir.1971). Invoking or participating in litigation does not waive a party's arbitration rights. *Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1158 (5th Cir.1986). A party waives its rights to arbitration when the litigation has been so substantial that compelling arbitration would prejudice the other party. *Id.* The question of whether the movant's participation in litigation has been substantial enough to constitute waiver is fairly strict: "waiver of an arbitration right will not be lightly inferred without some showing of prejudice." *Valero Refining, Inc. v. M/T Lauberhorn,* 813 F.2d 60, 66 (5th Cir.1987).

■ Here, Ventura filed its Declaratory Judgment action to obtain emergency relief, because ADM was refusing to allow the M/V OLGA to sail, and the master of the vessel could not in good conscience issue clean mate's receipts for cargo he believed had been infested. Arbitration would have been a slow and cumbersome method of adjudicating the problem, and

an undesirable scenario for both parties. Ventura chose to file its action in federal court (and, the court notes, ADM also chose to file its vessel-seizure in federal court the next day). This court was the parties' best hope for achieving a quick, efficient resolution to the limited problem of whether the ship should sail. Using this court to fulfill this role, however, has not precluded either party from invoking the arbitration clause in the bill of lading.

Had this case progressed further than it has, it might be prejudicial to ADM to allow Ventura to change from a federal forum to an arbitration panel. This case is a far cry from those situations where courts have refused to compel arbitration pursuant to an arbitration clause on the eve of trial or after a case has already been adjudicated. Courts have upheld parties' right to arbitrate even where cases were pending much longer than this one. In *Walker v. Bradford & Co.,* for example, the Fifth Circuit reversed a district court's denial of a demand for arbitration even though the suit had been pending for thirteen months and the incident in question had occurred two years before the suit was filed. Central to its decision was the fact that the party seeking arbitration had not filed a dispositive motion, such as a summary judgment motion, and only minimal discovery had occurred. *Walker v. Bradford & Co.,* 938 F.2d 575, 577–78 (5th Cir.1991). *See also Price v. Drexel Burnham,* 791 F.2d at 1162 (5th Cir.1986), *Miller Brewing Co. v. Fort Worth Distributing Co., Inc.,* 781 F.2d 494, 498 (5th Cir. 1986).

Similarly, this case has at this point progressed only minimally. Ventura's original declaratory action claim was voluntarily dismissed after the parties agreed to send the cargo to Dublin. The only issue before the court is ADM's counter-claim. Trial is not set in this matter until July, and upon the filing of this motion, the only action taken that had been taken by Ventura was filing an answer to ADM's counter-claim. Ventura has not moved to

dismiss, nor has it moved for summary judgment. ADM will not be prejudiced by Ventura's decision to defend itself using the arbitration process instead of the resources of this court. The court therefore finds that Ventura has not waived its right to arbitration. Accordingly,

**IT IS ORDERED** that the Motion to Stay Litigation and Compel Arbitration is hereby **GRANTED.** ADM is ordered to submit its counterclaim to arbitration in London as required by the bill of lading.

**IT IS FURTHER ORDERED** that the clerk of court is hereby directed to statistically close the case.