United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 9, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 01-31193

_____

CARGILL FERROUS INTERNATIONAL, a Department of Cargill Incorporated,

Plaintiff-Appellee-Cross-Appellant,

v.

SEA PHOENIX MV, etc; ET AL,

Defendants,

SEA PHOENIX MV, her engines, tackle, apparel, etc, in rem;
COSCO (SINGAPORE) Private LTD, in personam;
WESTERN BULK CARRIERS, in personam,

Defendants-Appellees,

and

SERENE SKY SHIPPING INC,

Defendant-Appellant-Cross-Appellee.

_____

Appeals from the United States District Court
For the Eastern District of Louisiana

_____

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and HUDSPETH,[*] District Judge.

_____

[*] District Judge of the Western District of Texas, sitting by designation.

1

EDITH BROWN CLEMENT, Circuit Judge:

A vessel owner appeals the district court's denial of its motion to compel arbitration and stay litigation between itself and a shipper, where the vessel owner had charterer the vessel to a time charterer and the time charterer had, in turn, chartered the vessel to the shipper.[1] The shipper cross-appeals the district court decisions dismissing its bailment claim against the vessel operator and granting a motion to compel arbitration and stay litigation between the shipper and the time charterer. We reverse the district court's denial of the motion to compel arbitration between the vessel owner and the shipper because the bills of lading between the vessel owner and the shipper incorporated the arbitration clause of the shipper's voyage charter with the time charterer. We dismiss, for lack of appellate jurisdiction, the shipper's cross-appeal relating to the order compelling arbitration and staying litigation because that part of the case has not yet led to a final judgment by the district court. We dismiss, also for a lack of appellate jurisdiction, the voyage charterer's cross-appeal of the dismissal of its bailment claim.

## I. FACTS AND PROCEEDINGS

Cargill Ferrous International ("Cargill") and Western Bulk Carriers K/S ("Western") entered into a voyage charter to transport Cargill's steel coils from Ventspils, Latvia to New Orleans, Louisiana. The voyage charter contained a mandatory arbitration clause. Western provided the M/V SEA PHOENIX, which it had time-chartered. After stevedores discharged the steel coils in New Orleans, Cargill discovered that fresh water had rusted the steel coils. Cargill sued Western; Serene Sky Shipping, Inc., the owner of the SEA PHOENIX; COSCO (Singapore) Pte. Ltd., the operator of the SEA PHOENIX (Serene and COSCO collectively as "Serene"); the SEA PHOENIX *in rem*; and

---

[1] We ignore, for simplicity, additional intermediate charterers.

2

others.

Pursuant to the voyage charter, the district court referred Cargill's claims against Western to arbitration. The district court denied Serene's motion to compel arbitration and stay litigation. The district court reasoned the claims against Serene were not subject to the voyage charter's arbitration clause because Serene was not a party to the voyage charter. Although the district court held that the bills of lading were the contracts of carriage for purposes of Cargill's claims against Serene, the district court concluded that the bills of lading had not incorporated the voyage charter's arbitration clause. After a two-day bench trial, the court entered judgment against Serene for $57,182.15 plus prejudgment interest but denied Cargill's bailment claim against Serene.

## II. STANDARD OF REVIEW

We review a district court's refusal to compel arbitration and stay litigation de novo. *Texaco Exploration & Prod. Co. v. AmClyde Eng'g Prods. Co.*, 243 F.3d 906, 908 (5th Cir. 2001). In contrast, we do not review interlocutory orders compelling arbitration because our jurisdiction is limited: "Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order (1) granting a stay of any action" to accommodate arbitration. 9 U.S.C. § 16(b) (1999).

## III. DISCUSSION

The Court will first address the issues presented by the parties. After, it will address arguments raised by the opinion concurring in part, dissenting in part.

### A.

Serene asks this Court to review the district court's denial of Serene's motion to compel arbitration and stay litigation. As cross-appellant, Cargill asks the Court to review the district court's

decision to compel arbitration between Cargill and Western and its decision to dismiss Cargill's bailment claim.

(1)

Serene argues it has a right to compel arbitration, either because the voyage charter served as the contract between Serene and Cargill or because the bills of lading incorporated the voyage charter. Cargill disputes both arguments and further contends Serene waived any right it may have had to compel arbitration.

In *Cargill B.V. v. S/S Ocean Traveller*, 726 F.Supp. 56, 59 (S.D.N.Y. 1989), Cargill argued, as it does here, that a bill of lading failed to incorporate a charter party where the space provided on the bill of lading for identifying a charter party was left blank. *Ocean Traveller* rejected this argument: "The argument is without merit on these facts. . . . Whatever may be the merits of its argument in a case where consignor or consignee under the bill of lading is without adequate notice of the terms of a charter party adopted by cross-reference, this contention [has] no application to the very party that negotiated the charter." *Id.* (citations omitted). In a similar vein, the bill of lading in *State Trading Corp. of India v. Grunstad Shipping*, 582 F.Supp. 1524-25 (S.D.N.Y. 1984), *aff'd without opinion*, 751 F.2d 371 (2d Cir. 1984), stated: "All terms and conditions, liberties and exceptions of the charter-party, dated as overleaf, are herewith incorporated." *State Trading* concluded this language was sufficient to incorporate a charter party:

> It is true that the bill of lading did not name the parties to the charter party it was attempting to incorporate, or state the date or place of its making . . . . [W]here there is no confusion whatsoever concerning who in fact was the charterer on this voyage, or which charter party governed the rights of the charterer vis-a-vis the shipowner, an incorporation clause may effect incorporation even though it does not contain the names of the signatories or the date or place of the making of the charter party.

4

> Here, defendant could not have been confused regarding which charter party the bill of lading sought to incorporate. The terms of the charter party between the defendant and the charterer . . . contained a provision that 'any bill of lading signed by the Master or Agent of the Owner shall be without prejudice to the terms, conditions, and exceptions of this Charter and shall be subject to all such terms, conditions, and exceptions . . . .' Thus, defendant can hardly express ignorance as to which charter party the bill of lading signed by its agent referred.

582 F.Supp. at 1524. The bills of lading in the present case are almost identical to the bills of lading in *State Trading*, with the exception that these bills of lading specifically mention the arbitration clause: "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, *including the Law and Arbitration Clauses*, are herewith incorporated." (emphasis added). *State Trading* holds such language is enough to effect incorporation where the bills of lading are in the hands of the charterer and where there is no confusion concerning who was the charterer or which charter party the bills of lading sought to incorporate.

There can be no confusion in the present case. First, Cargill received and continued to hold bills of lading issued pursuant to the Cargill-Western Bulk voyage charter. *See Ocean Traveller*. 726 F.Supp. at 59.[2] Second, the agent who signed the bills of lading, New England Shipping Company, received its agency authority solely from a term in the voyage charter.[3] Third, the bills of lading

---

[2] It should be noted that the bills of lading indicate the party from whom Cargill purchased the steel coils, AO Severstal, is the shipper and Cargill is the consignee–the bills of lading contain the phrase: "to the order of Cargill". This does not change the analysis for two reasons. First, the cargo was shipped FOB Ventspils, Latvia, so Cargill assumed responsibility for the cargo upon is stowage, lashing, and dunnage in Latvia. Second, and most importantly, Cargill arranged the shipment by negotiating and signing the voyage charter. Thus Cargill is the shipper for purposes of the charter party and any analysis under the Carriage of Goods by Sea Act, 46 U.S.C.A. §§ 1300-15 (West 1975).

[3] The district court held that Serene judicially admitted New England acted as Serene's agent. The only document addressing New England's agency authority is the voyage charter. Thus, bills of lading signed by New England are enforceable *only because* of a contractual term agreed upon during negotiations between Cargill and Western. (We have not been asked to

indicate freight is to be paid pursuant to the charter party. This provision depends on the incorporation of the Cargill-Western Bulk voyage charter to retain any meaning. Fourth, the Cargill-Western Bulk voyage charter, the only charter party Cargill signed, requires all bills of lading issued under the voyage charter to incorporate, among other things, the voyage charter's arbitration clause. *State Trading*, 582 F.Supp. at 1524.

Cargill clings to this Court's opinion in *Cargill, Inc. v. Golden Chariot MV*, 31 F.3d 316 (5th Cir. 1994), arguing it provides the test in this circuit for whether language in a bill of lading is sufficient to incorporate a charter party. In *Golden Chariot*, a carrier, Marinera, asserted that a dispute between it and Savannah, a third-party purchaser of a shipment of sugar, would have to be arbitrated pursuant to a charter party between itself (Marinera) and the shipper, Cargill. *Golden Chariot* acknowledged the established rule that charter parties are the contracts of carriage in private carriage. 31 F.3d 318; *see Alamo Chem. Trans. Co. v. M/V Overseas Valdes*, 469 F.Supp. 203, 208-11 (E.D. La. 1979) (stating that where charter party provided that the charterer employed the "entire ship" or "full capacity of the ship," it is a private carriage and the charter party is the contract of carriage). But *Golden Chariot* went on to consider the argument that "when cargo is sold to a third party receiver of goods, who was not a party to the charter agreement, and the bill of lading is delivered to that party, the bill of lading *becomes* the contract of carriage." 31 F.3d at 318 (emphasis added). *Golden Chariot* adopted this argument and stated, as an exception to the general rule, that bills of lading issued under a charter party serve as the contract of carriage if the bills of lading are

---

review whether, in light of provisions in the charter party between Serene and Western, Serene delegated sufficient agency authority to Western in order for Western's agents to bind Serene, thereby documenting New England's agency relationship to Serene and supporting the conclusion of the district court.)

negotiated.  *Id.  Golden Chariot* then considered whether the bills of lading then at issue incorporated the charter party.  To do so, the Court announced the following test: "where the date and name of the charter party is left blank there is no incorporation."  31 F.3d at 318 (citations omitted).  The *Golden Chariot* test does not, however, apply when the bills of lading remain in the hands of a party to the voyage charter.  *See*, *e.g.*, *Steel Coils, Inc. v. M/V Lake Marion*, 2001 WL 1518302 at *8-9, 2001 U.S. Dist . LEXIS 20114 (E.D.La. November 29, 2001) ("When a bill of lading has been transferred for value to a third part y not a party to the charter party, it constitutes an undertaking independent of the charter party except as to provisions of the charter party expressly incorporated into it. . . . This places [a shipper] in a far different position than a third-party purchaser who is unrelated to the charterer.") (citing *Golden Chariot*, 31 F.3d at 318); *see also Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 237 (5th Cir. 1998) (finding incorporation where the bill of lading only listed the date of the charter party even though the bill of lading was negotiated to a third-party purchaser, and noting "precedent allows for quite a bit of leeway in the drafting of [incorporation] clauses, and does not require a punctilious degree of specificity").

Cargill asserts that, even if Serene had a right to compel arbitration, Serene waived its right.

Waiver of arbitration is not a favored finding and there is a presumption against it.  *See Steel Warehouse*, 141 F.3d at 234; *see also Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d. Cir. 1995) (stating waiver of arbitration "is not to be lightly inferred" in light of the strong federal policy in favor of arbitration).  A party waives its right to arbitration only when participation in the litigation has been so substantial that compelling arbitration would prejudice the other party.  "The question of whether the movant's participation in the litigation has been substantial enough to constitute waiver is fairly strict: waiver of an arbitration right will not be lightly inferred

7

without some showing of prejudice." *Ventura Mar. Co. v. ADM Exp. Co.*, 1999 AMC 1676, 1680-81 (E.D. La. 1999) (citations omitted).

Cargill argues Serene waived its right because Serene elected to proceed with litigation instead of taking an immediate appeal of the district court's denial of the motion to compel arbitration and stay litigation. *See* 9 U.S.C. § 16(a)(1999) (authorizing interlocutory appeal of orders refusing to compel arbitration and stay litigation). Serene counters that this decision is permissible under *Sibley v. Tandy Corp.*, 543 F.2d 540, 542 (5th Cir. 1976), where we wrote that a party "did not waive its right [to arbitration] by failing to press an interlocutory appeal of the district judge's denial of its motion to stay arbitration." We agree. Failure to press an interlocutory appeal is not dispositive of whether a party waives the right to compel arbitration. The proper test is whether participation in litigation prejudiced the other party. *Ventura Mar. Co.*, 1999 AMC at 1681.

Cargill contends it was prejudiced by Serene's participation in the litigation, which included more discovery than would be available in arbitration and a two-day bench trial. Cargill argues that it is a waste of judicial resources and an affront to arbitration to allow the losing side in litigation to obtain a do-over by compelling arbitration after its loss in court. Cargill notes its arbitration claims are now time-barred.

Cargill was not prejudiced by Serene's participation in the litigation. The voyage charter required arbitration to be commenced within nine months from the cargo's discharge. Stevedores in New Orleans discharged the cargo on October 13-16, 1997. Cargill did not initiate any arbitration between any party within nine months of the discharge. Cargill commenced the present suit almost a year after discharge, on October 9, 1998. As the aggrieved, Cargill had the duty to initiate arbitration within the applicable time-limit. Thus it was Cargill's own failure that caused any prejudice it may suffer

8

from the defeat of its arbitration claims. As one commentator has noted:

> When on the ground that a contract is subject to an arbitration clause incorporated from a charter-party, one party to a bill of lading applies to the court to stay an action brought against him by the other party to the bill, he only rarely does so because he prefers to arbitrate than to litigate. The usual reason is because, when the application is made, the time has expired by which the other party must start any arbitration proceedings. *Success in staying the court proceedings thus means a complete defeat of the claim.* It is for this reason, and not because of any intrinsic merit in the process of arbitration, that disputes as to whether an arbitration clause in a charter-party has or has not been incorporated into the bill of lading arise with such regularity.

THOMAS J. SCHOENBAUM, 2 ADMIRALTY AND MARITIME LAW 212 (3d ed. 2001) (citing Note, *Incorporation of Charter Party Terms*, LLOYD'S MAR. & COMM. L.Q. 194-95 (1984)) (emphasis in original). Under the facts of this case, it is clear Serene is not gaming the system by seeking a win at trial, and in the case of a loss, anticipating a second bite at the apple through arbitration. Rather, Serene has preferred arbitration since the time Cargill filed its complaint.

The only possible prejudice to Cargill is the expenses it incurred pursuing the litigation, including taking depositions, some of which required international teleconferencing, and participating in a two-day bench trial. Serene asserted its right to arbitrate in its answer to Cargill's second amended complaint. It is true Serene waited until a settlement conference six months later to file its motion to compel arbitration. But at that point, only one deposition had been taken, and that deposition was noticed by the stevedores on their own behalf. We cannot infer Serene maliciously forced Cargill to spend money to put up its proof because Serene was also forced to spend its money taking or defending depositions and participating in the trial. Given that compelling arbitration would defeat Cargill's claims, it is untenable to argue that Serene viewed a costless automatic victory in arbitration as the back-up plan to a potential loss from costly litigation.

(2)

9

As cross-appellant, Cargill challenges the district court's decisions to compel arbitration between Cargill and Western and to dismiss Cargill's bailment claim.

Western succeeded in compelling arbitration and has since completely avoided the arbitration process. Nevertheless, our review of this issue is limited. The district court's July 18, 2000 order is only "an order granting a stay"; no appeal is possible until the court reaches a "final decision with respect to an arbitration." 9 U.S.C. § 16(a)(3) (1999); *see Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 707 (5th Cir. 2002) (holding the court of appeals gains appellate jurisdiction over a motion to compel arbitration *after* the district court clearly expresses the intention of effectively ending the entire matter on the merits by either (1) dismissing the case or (2) entering a "final judgment" stating "this case is closed"). The district court granted Western's motion to compel arbitration and stay litigation and has not yet entered final judgment as between Cargill and Western. Until it either closes or dismisses this part of the case, the district court, and not this Court, has the power to vacate its stay. *Miller v. Aaacon Auto Transp., Inc.*, 545 F.2d 1019, 1020 (5th Cir. 1977) (rejecting argument that district court lacks authority to vacate, *sua sponte*, a stay pending arbitration).

Moreover, this Court is deprived of jurisdiction over all of Cargill's claims as cross-appellant, including its bailment claim, until the district court certifies a final judgment pursuant to Federal Rule of Civil Procedure 54(b). Thus we dismiss Cargill's cross-appeal.

B.

The opinion concurring in part, dissenting in part, disagrees with the Court's holdings regarding two issues: (1) whether the bills of lading incorporate the arbitration agreement in the Cargill-Western Bulk charter party, such that Serene can compel Cargill to arbitrate its claim against Serene, and (2) whether the Court has subject matter jurisdiction to determine whether it has subject matter

10

jurisdiction.

(1)

The disagreement over whether the bills of lading incorporate the charter party stems from a disagreement over whether bills of lading issued pursuant to a charter party play a different role once they are negotiated. The dissent appears to believe that bills of lading issued pursuant to a charter party have one function that does not change even if the bills of lading are later negotiated. Thus, the dissent apparently concludes that the test for incorporation developed by a line of cases dealing with negotiated bills should apply to bills that have not been negotiated. The dissent offers no legal authority in support of its undifferentiated view of bills of lading. In support of its transplanting the incorporation test so that the same rule of incorporation applies to *any* bill of lading, negotiated or non-negotiated, the dissent offers one policy argument: "In my view, it makes more sense . . . ."[4]

Admiralty law teaches that bills of lading may serve multiple functions. "A bill of lading is, in the first instance and most simply, an acknowledgment by a carrier that it has received goods for shipment. Secondly, the bill is a contract of carriage. Thirdly, if the bill is negotiated . . . it controls possession of the goods and is one of the indispensable documents in financing the movement of commodities and merchandise throughout the world." GRANT GILMORE & CHARLES L. BLACK, THE

---

[4] For the proposition that bills of lading should be construed against their drafters, the dissent cites two cases that are of limited relevance because they involve bills of lading in common, as opposed to private, carriage. *See SPM Corp. v. M/V Ming Moon*, 965 F.2d 1297, 1299 (3d Cir. 1992) (reciting that Blue Anchor is a common carrier and that three crates of equipment were shipped on a container vessel); *West India Indus., Inc. v. Tradex, Tradex Petroleum Servs.*, 664 F.2d 946, 947-48 (5th Cir. 1981) (reciting facts of common carriage transportation of oil field equipment). For a discussion of the difference between common and private carriage, including the different roles played by bills of lading and the different law that applies to bills in each case, see *Nichimen Co. v. M.V. Farland*, 462 F.2d 319, 326-27 (2d Cir. 1972).

11

LAW OF ADMIRALTY, 93 (2d ed., 1975); *see also* SCHOENBAUM, *supra*, 59 (stating three potential functions of a bill of lading are as receipt, contract of carriage, and document of title).

A bill of lading's character changes when it is negotiated. *See*, *e.g.*, *Golden Chariot*, 31 F.3d at 318 (adopting argument that "when cargo is sold to a third party receiver of goods, who was not a party to the charter agreement, and the bill of lading is delivered to that party, the bill of lading *becomes* the contract of carriage") (emphasis added); *Otto Wolff Handelsgesellschaft, mbH v. Sheridan Transp. Co.*, 880 F. Supp. 1353, 1355 (E.D.Va. 1992) (stating that where the bill of lading issued under charter party is negotiated to a third-party, the bill of lading becomes the contract of carriage); SCHOENBAUM, *supra*, 210 ("The situation becomes more complicated, however, where the bill of lading issued under a charter party is negotiated to a third party consignee or holder in due course."); *see also Farland*, 462 F.2d at 328 ("It is true that when there is a voyage or, even more clearly, a time charter, a bill of lading issued to the charterer-shipper, so long as it remains in his hands, usually is a mere receipt as between the parties to the charter and does not perform the additional function of a contract for the carriage of goods."); *Vanol USA, Inc. v. M/T Coronado*, 663 F. Supp. 79, 81 (S.D.N.Y. 1987) (stating that a non-negotiated bill of lading issued under a charter party is a "receipt for the goods").

The dissent apparently concedes the bills of lading in this case were not negotiated. Nevertheless, almost all of the cases the dissent cites involve negotiated bills of lading. *See Golden Chariot*, 31 F.3d at 316-17 ("Six bills of lading were negotiated and transferred from Cargill to Savannah."); *Steel Warehouse*, 141 F.3d at 235-36 (reciting that the voyage charterer, Mathan, negotiated a bill of lading to Steel Warehouse); *Son Shipping Co. v. De Fosse & Tanghe*, 199 F.2d 687, 688 (2d Cir. 1952) ("While the vessel was proceeding from Antwerp to Palestine, Solel Bonch, Ltd., sold the full cargo

12

of oil to The Palestine Electric Corporation and delivered the documents to it."); *Lafarge Corp. v. M/V Macedonia Hellas*, 2000 WL 687708 at *1-3, 2000 U.S. Dist. LEXIS 15963 (E.D.La. 2000) (reciting that the voyage charterer, Cementia, negotiated bills of lading to Lafarge, and citing *Golden Chariot* for the proposition that "[w]hen a negotiable bill of lading has been transferred to a third party, such a bill of lading constitutes a contract of carriage independent of the terms of any underlying charter party, except for the provisions of any charter party that have been incorporated into the bill."); *Mitsui & Co. v. M/V Hermann Schulte*, 1996 WL 365660 at *1-2 (E.D.La. 1996) (reciting that the voyage charterer, Mitsui & Co. (U.S.A.), Inc., sold the cargo to Mitsui & Co., Inc., who sold the cargo the Shin-Etsu Chemical Co., Ltd., and noting that "[w]hen a negotiable bill of lading has been transferred to a third party, such a bill of lading constitutes a contract of carriage independent of the terms of any underlying charter party, except for the provisions of any charter party that have been incorporated into the bill."); *Joo Seng Hong Kong Co. v. S.S. Unibulkfir*, 492 F. Supp. 35, 37 (S.D.N.Y. 1980) (reciting that the voyage charterer, Cook Industries, Inc., negotiated bills of lading to Joo Seng Hong Kong Co.). If, as the Court concludes, the legal test for incorporation differs for negotiated and non-negotiated bills of lading, the cases cited by the dissent are irrelevant on the issue of the proper test for incorporation. On the other hand, at least two of these cases, *Lafarge* and *Mitsui*, are at least partially responsive to whether negotiated and non-negotiated bills of lading receive different incorporation tests, and both support the Court's conclusion that there are different tests.

Distinguished members of both the Eastern District of Louisiana and the Southern District of New York, two of the districts with the busiest admiralty dockets in the country, recognize that the legal standard for incorporation is different for negotiated and non-negotiated bills of lading. *See*, *e.g.*,

13

*Lake Marion*, 2001 WL 1518302 at *8-9, 2001 U.S. Dist. LEXIS 20114 (E.D.La. November 29, 2001) (Vance, J.) (recognizing that a shipper is in a "far different position" than a third party who receives a negotiated bill of lading); *Ocean Traveller*, 726 F.Supp. at 59 (Leval, J.) (discussing irrelevance of incorporation test used for negotiated bills of lading for purposes of non-negotiated bills of lading); *State Trading*, 582 F.Supp. 1523, 1525 (S.D.N.Y. 1984) (Weinfeld, J.) (noting that specificity in the bill of lading is required if the bill has been negotiated)*; Associated Metals and Minerals Corp. v. M/V Venture*, 554 F. Supp. 281 (E.D.La. 1983) (Schwartz, J.) (discussing the need for bills of lading to include more information to effect incorporation once the bills have been negotiated); *see also Steel Coils, Inc. v. Captain Nicholas I M/V*, 197 F. Supp. 2d 560, 564-57 (E.D.La. 2002) (Fallon, J.) (discussing generally the interplay of bill-of-lading negotiation and charter-party incorporation).

Even the dissent concedes some cases have found incorporation with much less information than is required by *Golden Chariot*. Dissent at 50-56. *See Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 324 (7th Cir. 1997) (finding incorporation where a non-negotiated bill of lading included the charter party's execution date and name of the form on which the charter party was printed); *Cont'l U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*, 658 F. Supp. 809, 813 (S.D.N.Y. 1987) ("As between these parties, citation to the date alone was sufficient to clearly incorporate the subcharter's provisions.").

As elsewhere noted, the correct test for whether a bill of lading issued under a charter party that remains in the hands of the charterer incorporates the charter party is whether "no confusion" exists concerning who in fact was the charterer on a voyage or concerning which charter party governs the rights of the charterer. *State Trading*, 582 F. Supp. at 1524. There can be no genuine confusion in

this case. *See infra* Part III.A.(1).

The dissent suggests the intentions of contracting parties are irrelevant to construing the bill of lading: "[i]t may be that the bills of lading *should* have incorporated the charter party between Western Bulk and Cargill. That does not, however, mean that the bills of lading *did* incorporate the charter party." Dissent at ll. 138-40. On the contrary, the contractual terms in the voyage charter, which were actively negotiated by the parties, are far more probative of the intentions of the parties than is a bill of lading which is normally considered a receipt, and which was issued as a matter of course by a third party agent who was removed in time and space from the negotiations regarding the charter. *See*, *e.g.*, *Captain Nicholas I*, 197 F. Supp. at 566 (noting that charter party's requirement that bills of lading include a USA Clause Paramount was an expression of the intention of the parties to include such a Clause Paramount in the bills of lading, even though the freight forwarder who prepared the bills of lading omitted the USA Clause Paramount). In the present case, the charter party's requirement that bills of lading incorporate its arbitration clause is persuasive evidence there was no confusion over who was a party to the charter party or which charter party should govern.

(2)

A bedrock principle of federal courts is that they have jurisdiction to determine jurisdiction. *See*, *e.g.*, *Capron v. Van Noorden*, 6 U.S. 126 (1804). The dissent complains that because we do not have jurisdiction under Rule 54(b), we therefore do not have jurisdiction to decide whether we have jurisdiction under the Federal Arbitration Act. The dissent appears to propose that a hierarchy exists among the reasons this Court lacks subject matter jurisdiction, such that a court runs afoul by considering the reasons in the incorrect sequence. The dissent cites no legal authority for this interpretation of two centuries of jurisprudence, and we decline to adopt it. *See Siegert v. Gilley*, 500

15

U.S. 226, 235 (1991) (Kennedy, J., concurring) (defending courts of appeals that decide cases before them on the grounds that appear to offer the most direct and appropriate resolution).

## IV.  CONCLUSION

For the reasons stated, the district court's denial of Serene's motion to compel arbitration is reversed, the judgment ordering Serene to pay Cargill $57,182.15 plus prejudgment interest is vacated, and Cargill's claims as cross-appellant are dismissed without prejudice.

REVERSED IN PART; DISMISSED IN PART.

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority opinion insofar as it dismisses the bailment claim brought by Cargill Ferrous, International ("Cargill") against COSCO (Singapore) Pte., Ltd. ("COSCO"), the manager of the M/V Sea Phoenix ("Sea Phoenix" or "vessel"). As the majority opinion concludes, the parties must seek a certification from the district court pursuant to Federal Rule of Civil Procedure 54(b) in order for us to have jurisdiction over the bailment claim. However, I cannot agree with the majority opinion's treatment of the other two issues in this case. First, unlike the majority opinion, I conclude that there was no arbitration agreement between Serene Sky Shipping, Inc. ("Serene") and Cargill. As a result, I would affirm the district court's dismissal of Serene's motion to compel arbitration. Second, I believe that, absent a Rule 54(b) certification, we lack jurisdiction to review the district court's decision to compel arbitration between Western Bulk Carriers ("Western Bulk") and Cargill.

I

It might be useful to review the facts of this case. Serene, the owner of the Sea Phoenix, acting through an intermediary (GTS Steamship (Panama) Inc.), time-chartered the vessel to Western Bulk.[5] Western Bulk voyage-chartered the Sea Phoenix to Cargill.[6] Cargill chartered the vessel in order to transport some steel coils from Ventspils, Latvia to New Orleans, Louisiana.

The steel coils arrived in a damaged condition, so Cargill brought this action against

---

[5] A "time charter" is a charter for a specified period of time, rather than for a specific task or voyage. *See* BLACK'S LAW DICTIONARY 1483 (6th ed. 1990).

[6] A voyage charter is a charter for a particular task or voyage. *See id.* at 1577.

17

Serene and Western Bulk.[7] The district court granted Western Bulk's motion to compel

arbitration against Cargill, so Western Bulk did not go to trial. The district court denied Serene's

motion to compel arbitration against Cargill. After a bench trial involving Serene and Cargill, the

district court found that Serene was negligent in transporting the steel coils (a finding that no

party disputes). The court ordered Serene to pay $57,182.15 to Cargill.

## II

The majority opinion holds that Serene can arbitrate its dispute with Cargill. As the

majority opinion apparently recognizes, in order for Serene to compel arbitration, Serene must

have had an agreement to arbitrate with Cargill. *See Baton Rouge Oil & Chem. Workers Union v.*

*Exxon Mobil Corp.*, 289 F.3d 373, 376 (5th Cir. 2002) ("Due to its inherently contractual nature,

arbitration may be ordered only for a dispute that the parties have agreed to arbitrate."). Serene

asserts that it can arbitrate its claims with Cargill pursuant to an arbitration clause contained in the

voyage charter (or "charter party") between Cargill and Western Bulk.[8] However, Serene was

---

[7] Cargill also filed suit against the Sea Phoenix *in rem*, but the district court dismissed that claim for lack of service of process and for failure to prosecute. In addition, Cargill filed suit against COSCO, the manager and operator of the vessel, and Coastal Cargo Company, Inc., the stevedoring company that unloaded the Sea Phoenix in New Orleans. The district court dismissed Cargill's claims against those parties as well. COSCO does, however, join Serene in appealing the district court's denial of Serene's motion to compel arbitration.

[8] The relevant clause of the charter states:

> All disputes from time to time arising out of this contract shall,
> unless the parties agree forthwith on a single Arbitrator, be referred
> to the final arbitrament of two Arbitrators carrying on business in
> London who shall be members of the Baltic Exchange and engaged
> in the Shipping and/or Grain Traders one to be appointed by each
> of the parties, with power to such Arbitrators to appoint an
> Umpire. Any claim must be made in writing and Claimant's
> Arbitrator appointed within nine months of final discharge and

18

not a signatory party to the charter party. Thus, as the majority opinion appears to conclude, Serene cannot automatically take advantage of the arbitration clause in that charter party.

The only contract between Serene and Cargill can be found in the bills of lading issued by Serene to Cargill. As a result, Serene can take advantage of the arbitration clause in the charter party only if the bills of lading incorporated the charter party. We have stated that "[a] bill of lading can incorporate a charter party if the bill of lading specifically refers to the charter party." *Cargill Inc. v. Golden Chariot MV*, 31 F.3d 316, 318 (5th Cir. 1994). The majority opinion asserts that there was sufficient language in the bills of lading to incorporate the charter party (and, thus, the arbitration agreement within the charter party). I disagree.

We have stated that, in order for a bill of lading to incorporate a charter party, the bill should contain the name and date of the charter party. *See id.* Along those lines, courts have consistently concluded that a bill of lading incorporated a charter party when the bill referred to the date of the charter party and at least one additional piece of information. *See, e.g., Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 323-25 (7th Cir. 1997) (finding incorporation when the name and the date of the charter party were included in the bills of lading); *Son Shipping Co. v. De Fosse & Tanghe*, 199 F.2d 687, 688 (2d Cir. 1952) (finding incorporation when the date and the names of the parties to the charter party were included); *Salim Oleochemicals, Inc. v. M/V Shropshire*, 169 F. Supp. 2d 194, 196 (S.D.N.Y. 2001) (observing that the bill of lading

---

> where this provision is not complied with the claim shall be deemed
> to be waived and absolutely barred. No award shall be questioned
> or invalidated on the ground that any of the Arbitrators is not
> qualified as above, unless objection to his acting be taken within
> two weeks of his appointment. Arbitration is in London according
> to English law.

"explicitly incorporated" the charter party by referring to the date and the names of the parties to the charter party).

In certain cases, we have found that a bill of lading contained sufficient information to incorporate a charter party when the bill referred solely to the date of the charter party. *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234, 237 (5th Cir. 1998) ("While it would have been preferable for this clause in the bill of lading to have been more specific and detailed, it passes muster, given the facts of this case."); *see also Cont'l U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*, 658 F. Supp. 809, 813 (S.D.N.Y. 1987) ("As between these parties, citation to the date alone was sufficient to clearly incorporate the subcharter's provisions.").

In the present case, however, the bills of lading did not refer to the name or the date of the charter party. In such situations, we have been unwilling to find incorporation. *Golden Chariot*, 31 F.3d at 318 ("[W]here the date and name of the charter party is left blank, there is no incorporation."); *see also Lafarge Corp. v. M/V Macedonia Hellas*, 2000 WL 687708 at *5 (E.D. La. May 24, 2000) ("In this case, the bill of lading nowhere specified which charter party's terms were purportedly being incorporated. In fact, the party who filled out the bill of lading ignored blanks specifically seeking information on the date of the relevant charter party."); *Mitsui & Co. v. M/V Hermann Schulte*, 1996 WL 365660 at *2 (E.D. La. July 1, 1996) (Clement, J.) ("[T]he party who filled out the bill of lading ignored blanks specifically seeking information on the date, place, and parties of the relevant charter party. . . . Given the clear law providing that at least minimal identification of the charter party is a precondition to its incorporation into a bill of lading, such an omission can only be regarded as a decision not to seek incorporation of the

20

charter party.").

*Cargill Inc. v. Golden Chariot MV*, 31 F.3d 316 (5th Cir. 1994), and the cases applying it, make clear that when a bill of lading fails to specify either the name or the date of the charter party, the bill does not incorporate the charter party. Thus, *Golden Chariot* would seem to make our job in this case quite simple: the bills of lading failed to include sufficiently specific terms of incorporation, so they did not incorporate the voyage charter (or its arbitration clause). As a result, we should hold (as did the district court) that Serene cannot compel arbitration of its dispute with Cargill.

The majority opinion, however, complicates the issue by asserting that the rule in *Golden Chariot* is inapplicable in the present context. In order to understand the majority opinion's reasoning, it may help to review the facts of *Golden Chariot*. In that case, Savannah Foods ("Savannah") entered into a contract to purchase sugar from Cargill. *Id.* at 316. Cargill entered into a voyage charter with Marinera (the owner of the Golden Chariot) to transport the sugar from Argentina to Georgia. *Id.* The charter party between Marinera and Cargill contained an arbitration clause stating that "any and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York." *Id.* at 317. When the cargo was loaded, Marinera delivered bills of lading to Cargill, which Cargill in turn "negotiated and transferred" to Savannah. *Id.* at 316-17.

The sugar arrived in a damaged condition, so Savannah and Cargill sued Marinera. *Id.* at 317. This Court found that Savannah, as the title owner of the sugar at the time of loss, was the proper party plaintiff. *Id.* at 317-18. Marinera attempted to force Savannah to arbitrate the dispute. *Id.* at 317. Savannah, of course, was not a party to the voyage charter between Cargill

21

and Marinera, so Marinera could not automatically require Savannah to submit to arbitration. The bills of lading constituted the only contract between Marinera and Savannah. *Id.* at 318. However, Marinera insisted that the bills of lading incorporated the charter party and its arbitration clause. As noted, we held that the bills of lading did not include sufficiently specific language of incorporation. We declared that "[a] bill of lading can incorporate a charter party if the bill of lading specifically refers to the charter party. However, where the date and name of the charter party is left blank, there is no incorporation." *Id.* at 318 (citation omitted).

The majority opinion asserts that *Golden Chariot* is distinguishable from the instant case. The opinion states that "[t]he *Golden Chariot* test does not . . . apply when the bills of lading remain in the hands of a party to the voyage charter." The majority opinion appears to rely on the factual distinctions between *Golden Chariot* and the present case. In *Golden Chariot*, the party opposing arbitration (Savannah) was not a party to the charter party containing the arbitration clause. As a result, unless the bills of lading included specific language incorporating the charter party, Savannah would not have been on notice that it might have to arbitrate its claims. In the present case, by contrast, the party opposing arbitration (Cargill) was a signatory party to the voyage charter, and thus was on notice of the arbitration clause. The majority opinion appears to conclude that, if the party opposing arbitration was a signatory party to the agreement containing the arbitration clause, the bills of lading need not include very specific language of incorporation.[9]

_____

[9] The majority opinion relies primarily on two decisions from the Southern District of New York to support its position. *See Cargill B.V. v. S/S Ocean Traveller*, 726 F. Supp. 56, 59 (S.D.N.Y. 1989) (finding that bills of lading need not "identify the charter party with specificity" in order to compel "the very party that negotiated the charter" to arbitrate its claims); *State Trading Corp. of India, Ltd. v. Grunstad Shipping Corp. (Belgium) N.V.*, 582 F. Supp. 1523, 1524-25 (S.D.N.Y. 1984) (observing that "the bill of lading did not name the parties to the charter party it was attempting to incorporate, or state the date or place of its making," but

22

The majority opinion appears to reason that, because Cargill negotiated the agreement with the arbitration clause, Cargill was on notice that it might have to arbitrate any dispute arising out of this shipment. Thus, the majority opinion concludes, Cargill should be required to arbitrate its dispute with Serene. However, this reasoning is problematic. It is certainly fair to say that Cargill was on notice that it would have to arbitrate its claims against Western Bulk (the other party to the agreement containing the arbitration clause). It is not, however, necessarily accurate to say that Cargill was on notice that it might have to arbitrate its claims *against Serene*.

The majority opinion asserts that Cargill was on notice that it would have to arbitrate its dispute with Serene because the bills of lading stated that "[a]ll terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, *including the Law and Arbitration Clauses*, are herewith incorporated." The majority opinion appears to reason that, because the bills of lading mentioned an arbitration clause, Cargill should have known that the bills incorporated the arbitration clause in the voyage charter. The majority opinion apparently overlooks the fact that this case involved multiple charter parties. The voyage charter was not the only agreement containing an arbitration provision; the time charter between Serene and Western Bulk also included an arbitration clause.[10] It is difficult to imagine how Cargill could have inferred that the

finding that the language of incorporation was sufficiently specific, particularly because "it is a signatory to the charter party here that is seeking to avoid the incorporation clause").

[10] As noted above, Serene time-chartered the vessel to Western Bulk via an intermediary (GTS Steamship (Panama) Inc.). The arbitration clause in the time charter provides:

> That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at London, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement

above provision in the bills of lading referred to the arbitration clause in the voyage charter as opposed to some other arbitration provision. *See Joo Seng Hong Kong Co. v. S.S. Unibulkfir*, 493 F. Supp. 35, 40 (S.D.N.Y. 1980) (stating, when the bills of lading failed to include the name or the date of a specific charter party, that "[s]ince there are three charter parties involved in this shipment, . . . the Court cannot, with any degree of certainty, conclude that the . . . provision [in the bills of lading] specifically refers to [a particular charter party]").

Perhaps anticipating this concern, the majority opinion points out that the voyage charter between Cargill and Western Bulk "require[d] all bills of lading . . . to incorporate . . . the voyage charter's arbitration clause." The majority opinion thereby suggests that the terms of the voyage charter itself should have alerted Cargill to the fact that the bills of lading incorporated the arbitration clause in the voyage charter. The majority opinion appears to reason that, because Cargill was aware that the bills of lading were supposed to incorporate the voyage charter (and its arbitration clause), Cargill should have assumed that any bills of lading it received (regardless of the language on the bills themselves) did incorporate that particular charter party.

It may be that the bills of lading *should* have incorporated the charter party between Western Bulk and Cargill. That does not, however, mean that the bills of lading *did* incorporate the charter party. The bills of lading could only legally incorporate the charter party if they used language that, under this Court's precedent, referred specifically to the voyage charter between Western Bulk and Cargill. Under our precedent, the bills of lading did not include sufficiently

may be made a rule of the Court. The Arbitrators shall be commercial men who shall be members of LMAA and conversant with shipping matters. This Charter Party to be governed by and construed in accordance with English law.

24

specific language of incorporation. *See Golden Chariot*, 31 F.3d at 318. The majority opinion's conclusion to the contrary, in my view, cannot be reconciled with our case law.

The majority opinion attempts to demonstrate that its holding is consistent with our precedent. The majority opinion quotes dicta from *Steel Warehouse Co. v. Abalone Shipping Ltd. of Nicosai*, 141 F.3d 234 (5th Cir. 1998), stating that "precedent allows for quite a bit of leeway in the drafting of [incorporation] clauses, and does not require a punctilious degree of specificity." *Id.* at 237.[11] However, *Steel Warehouse* provides no support for the holding of the majority opinion. In *Steel Warehouse*, the parties included the date of the charter party. *Id.* Thus, that case required *some* degree of specificity. *Steel Warehouse* does not support the majority opinion's determination that a bill of lading can incorporate a charter party without referring to either the date or the name of the charter party.

Nevertheless, the majority opinion concludes that, because Cargill was a party to a charter party with an arbitration clause, the bills of lading in this case included sufficiently specific language of incorporation. The majority opinion thus holds that, when the party opposing arbitration was a party to an arbitration agreement, the bills of lading need not include *any* specific language of incorporation to force that party to arbitrate its claims. In essence, the majority opinion establishes that, when the holder of the bills of lading was a party to an agreement with an arbitration clause, the holder (in this case, Cargill) bears the burden of finding out whether the bills of lading have in fact incorporated that particular arbitration clause.

---

[11] It is unclear whether this statement in *Steel Warehouse* is entirely consistent with *Golden Chariot*. Of course, to the extent the decisions are inconsistent, the earlier precedent (*Golden Chariot*) prevails. *See H&D Tire and Auto.-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000) ("When panel opinions appear to conflict, we are bound to follow the earlier opinion.").

I do not see the policy justification for such a rule. In my view, it makes more sense to put the burden on the issuer of the bills of lading to ensure that the bills contain sufficient information to notify *any* holder that the bills incorporate a particular charter party (and its arbitration clause).[12] The issuer of the bills of lading has control over the terms of the bills of lading. Thus, the issuer is better positioned to ensure that the bills include particular terms of incorporation.[13] *Cf. SPM Corp. v. M/V Ming Moon*, 965 F.2d 1297, 1302 (3d Cir. 1992) (observing that, if the drafter of the bill of lading had wanted a specific term, the drafter "could easily have imposed that limitation"); *cf. also West India Indus., Inc. v. Tradex, Tradex Petroleum Servs.*, 664 F.2d 946, 951 n.9 (5th Cir. 1981) ("Courts construe a bill of lading strictly against the party that drafted it.").

In this case, the district court found that New England Shipping Company, the party that transmitted the bills of lading to Cargill, was the agent of Serene.[14] Thus, Serene (acting through

---

[12] That is particularly true in cases, such as the present one, that involve multiple charter parties. The issuer must make certain that the bills of lading notify holders that a specific charter party applies.

[13] Our decision in *Golden Chariot* provides support for this analysis. In that case, the issuer of the bills of lading (Marinera) attempted to enforce an arbitration agreement against the holder of the bills of lading (Savannah). 31 F.3d at 316-17. As discussed above, we found that the bills of lading did not contain sufficient information to incorporate the arbitration clause in the charter party. *Id.* at 318; *see also Mitsui*, 1996 WL 365660 at *2 (Clement, J.) (noting that "[t]he party who filled out the bill of lading ignored blanks specifically seeking information on the date, place, and parties of the relevant charter party," and concluding that "such an omission can only be regarded as a decision not to seek incorporation of the charter party").

[14] In its brief and at oral argument, Serene appeared to assert that New England Shipping was not Serene's agent, but was instead Cargill's agent. Generally, we review the district court's finding of an agency relationship for clear error. *Strachan Shipping Co. v. Dresser Indus., Inc.*, 701 F.2d 483, 486-87 (5th Cir. 1983); *see Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 864 (7th Cir. 1998). Serene has not, however, supported its assertion with any legal argument. Therefore, we need not consider Serene's contention. *See* FED. R. APP. P.

its agent) issued the bills of lading. As a result, in my view, the burden was on Serene to ensure that the bills of lading included sufficiently specific information to incorporate the voyage charter party (and its arbitration clause). Because Serene did not include sufficient information in the bills of lading, Serene should not now be permitted to force Cargill to arbitrate their dispute.[15]

### III

The majority opinion holds that this Court lacks jurisdiction to review the district court's

---

28(a)(9)(A); *Kane Enter. v. MacGregor (USA) Inc.*, __F.3d__, 2003 WL 297103 at *3 n.3 (5th Cir. Feb. 27, 2003) (observing that issues inadequately briefed are deemed waived); *see also Matter of T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 796 (5th Cir. 1997) ("Pursuant to [Federal Rule of Appellate Procedure] 28, this Court has found that contentions not briefed are waived and will not be considered on appeal.") (internal quotation marks omitted). We should thus accept the district court's conclusion that New England Shipping was Serene's agent.

[15] The majority opinion responds to the reasoning in this dissent by asserting that there is a critical distinction between negotiated and non-negotiated bills of lading. The majority opinion reasons that bills of lading should include language of incorporation when the bills are negotiated to a third party (presumably, a party that was not a party to the agreement with the relevant arbitration clause). I agree with that premise. However, then the majority opinion goes on to conclude that bills of lading need to contain sufficient language of incorporation *only* when they are negotiated. Therefore, the opinion holds, because the bills of lading issued by Serene to Cargill were not negotiated to a third party, the bills did not need to include *any* language of incorporation.

The majority opinion's conclusion in this case does not follow from its premise. As I said, I agree that, when bills of lading have been negotiated to a third party, the bills should include sufficient language of incorporation to notify the third party that it might have to arbitrate its claims. However, that does not mean that bills of lading need not include language of incorporation in *any other case*. There are many other scenarios in which the holder of the bills of lading will not be on notice that an arbitration agreement applies (or which arbitration agreement applies) unless the bills of lading include sufficient language of incorporation. The present case is an excellent example: because there were multiple arbitration agreements, the bills of lading needed to include sufficient language of incorporation to notify the holder (*i.e.*, Cargill) which arbitration agreement applied. In my view, in such cases (where there *is* "confusion" as to whether a particular arbitration agreement applies) the issuer of the bills of lading should be required to include sufficient language of incorporation to inform *any* holder that it might be required to arbitrate its claims.

27

grant of Western Bulk's motion to compel arbitration.  The  opinion observes that, under the Federal Arbitration Act (FAA), an appellate court does not have jurisdiction over an order compelling arbitration when the district court stays the underlying litigation.  *See* 9 U.S.C. § 16(b); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 87 n.2 (2000) (noting that when a district court orders the parties to arbitrate their claims, and enters "a stay instead of a dismissal . . . , that order [is not] appealable").  The majority opinion determines that, in this case, the district court stayed the litigation between Cargill and Western Bulk.  Therefore, the majority opinion concludes that this Court cannot review the district court's grant of Western Bulk's motion to compel arbitration.

In my view, it is premature for us to decide this issue of law.  I believe that, absent a Rule 54(b) certification, we lack jurisdiction even to decide whether we have jurisdiction under the FAA.

The Rule 54(b) problem is created by the presence of Western Bulk in this case.  Rule 54(b) states that "when multiple parties are involved [in an action], the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  FED. R. CIV. P. 54(b).  If the district court does not expressly direct the entry of judgment, then its ruling "shall not terminate the action as to any of the claims or parties," and is "subject to revision at any time[.]"  *Id.*  Therefore, absent a Rule 54(b) certification by the district court, its ruling is not a final decision for the purposes of appeal, and we lack jurisdiction over it.  *See Witherspoon v. White*, 111 F.3d 399, 402 (5th Cir. 1997) ("Until the district court makes an express determination [pursuant to Rule 54(b)] that no just reason for delay exists and

28

expressly directs entry of judgment, finality will not attach to an order that disposes of some but not all of the defendants."). In this case, the district court did not dismiss Western Bulk from the dispute. Because the court has not made a decision as to Western Bulk, its ruling has not automatically terminated the action as to any of the claims or parties.

The majority opinion agrees that Western Bulk's presence in the dispute creates a Rule 54(b) problem. For that reason, the majority opinion holds that we must dismiss Cargill's bailment claim against COSCO pursuant to Rule 54(b). I concur in that part of the judgment. Conversely, the majority opinion recognizes that there is no Rule 54(b) problem regarding the first issue in this case (whether the district court properly denied Serene's motion to compel arbitration). The FAA specifically gives this Court jurisdiction over a district court's *refusal* to order arbitration. *See* 9 U.S.C. § 16(a)(1)(C); *see also Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576 (5th Cir. 1991) (observing that the court had jurisdiction over an interlocutory appeal from the district court's denial of a motion to compel arbitration). The statute thus appears to make the district court's decision denying the motion to compel arbitration a final decision, even absent a Rule 54(b) certification.

That reasoning, however, does not apply to the district court's grant of Western Bulk's motion to *compel* arbitration. Under the FAA, when the district court compels arbitration, its order is not always deemed a final decision. As the majority opinion observes, when the district court stays the underlying litigation, the FAA does not give us jurisdiction to review the district court's order. By contrast, when the district court "dismisses" or "closes" a case, we have jurisdiction to review its order on the merits. *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 707-08 (5th Cir. 2002) (holding that a district court's order compelling arbitration is

29

appealable if the court either dismisses or closes a case). As a result, when a party appeals an order compelling arbitration, we must carefully examine the nature of the district court's decision in order to determine if we have jurisdiction under the FAA. In my view, until the district court issues a Rule 54(b) certification, we lack the power to engage even in this initial analysis. In other words, we lack jurisdiction under Rule 54(b) to determine whether we have jurisdiction under the FAA. Thus, I believe that the wisest course would be to dismiss this issue without prejudice, and give the parties an opportunity to request a Rule 54(b) certification from the district court. *See Ringwald v. Harris*, 675 F.2d 768, 771 (5th Cir. 1982) (observing that dismissal for lack of Rule 54(b) certification is without prejudice); *see also Road Sprinkler Fitters Local Union v. Cont'l Sprinkler Co.*, 967 F.2d 145, 152 (5th Cir. 1992) ("[T]he parties always have an avenue open to seek Rule 54(b) certification.").

For the above reasons, I respectfully dissent.